**UNITED STATES of America**

**v.**

**PARKER, Edward W., Appellant.**

**No. 88–3752.**

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
April 27, 1989.

Decided May 10, 1989.

George E. Schumacher, Federal Public Defender, Joel B. Johnston, Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

Charles D. Sheehy, Acting U.S. Atty., Constance M. Bowden, and Paul J. Brysh, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before SEITZ, SLOVITER and GREENBERG, Circuit Judges.

---

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Defendant, Edward Parker, appeals from the sentence imposed by the district court on October 31, 1988, following his plea of guilty on August 22, 1988 to an indictment under 18 U.S.C. § 1708, charging him with knowingly and intentionally stealing, taking and abstracting from the mail 122 pieces of mail, being first class insured parcels and packages, having a total value of approximately $22,500. He was sentenced to a custodial term of six months, to be followed by a two-year term of supervised release. The gravamen of Parker's appeal is that he only stole 45 packages with a much reduced value, so that the 6 level increase for a loss between $20,001 and $50,000 under § 2B1.1(b)(1)(G) of the sentencing guidelines was illegal.

These are the facts. Because the Post Office had received reports since March 31, 1986, of the loss of a large number of first class insured packages mailed to jewelry stores located in the Clark Building in Pittsburgh, it started an investigation. On June 17, 1988, a postal inspector placed five first class, numbered, insured parcels for delivery to jewelers in the Clark Building in a mailbag to be delivered to the building on June 18, 1988, at 3:30 a.m. At a stake-out the inspectors saw the bag taken to the mailroom door on the 17th floor. Five minutes later Parker, who was employed in the building as a cleaning person, approached the mailbag and took three of the test parcels from it. He was then arrested in possession of the parcels. After being warned of his rights, he admitted that he took the parcels as they might have contained something of value and said he had been doing that for about 15 months. In fact, the government had records that 127 packages worth $23,427 had been taken.

Even before an indictment was returned, there was successful plea negotiation between Parker, through an attorney, and the government. An understanding was reached that only one charge for taking 122 packages worth $22,500 to which Parker would plead guilty would be brought. This agreement was advantageous to Par-ker as the government could have brought multiple charges, thus increasing his sentence exposure. Furthermore, inasmuch as he was caught in the act of stealing mail, his chances of an acquittal seemed slim. In conformity with the understanding, the single count indictment was returned against Parker on July 14, 1988.

Parker appeared in court on August 22, 1988 to plead guilty. At that time the judge told him that he was charged with stealing 122 pieces of mail worth $22,500 and Parker said he understood the charges. His attorney told the district judge of the plea agreement. The Assistant United States Attorney then explained that it had been agreed that Parker would plead guilty to one count charging the theft of 122 pieces of mail even though it appeared that 127 pieces had been taken and "many many counts" could have been filed. Parker personally confirmed that this was the understanding.

Parker also said that he understood from his attorney that he could receive six to 12 months under the sentencing guidelines. Parker then admitted taking the 122 parcels worth approximately $22,500. The Assistant United States Attorney then gave a summary of the government's evidence. He said the government would prove that numerous numbered insured parcels containing primarily jewelry items had been taken from deliveries to the Clark Building and that there were well over 100 losses of over $20,000 in value from approximately March 31, 1986 until June 1988. He described how Parker was caught in the act of stealing packages which he admitted he had been doing for 15 months. He also indicated he had a printout showing that 127 packages valued at $23,427 had been taken but the government would rely on the amounts in the indictment, 122 packages valued at $22,500.

Parker then agreed with what had been stated and said he wanted to plead guilty. But he then said that he did not take all of the packages. He explained that the mailroom door is left open and the mail is placed out front where other people could reach it. Parker said "I am not really

responsible for all that mail. Some of it I will say." His attorney then indicated that the plea of guilty was being entered with his advice and that while Parker did not recollect all the packages mentioned in the indictment, in the light of his statement to the postal authorities "that he had been doing this type of activity for approximately the last 15 months, this is probably the best avenue for him." The judge then accepted the plea of guilty.

In the subsequently prepared presentence report it was stated that Parker acknowledged in an interview on August 22, 1988, that he was responsible for the theft of 40 to 45 packages over a two-year period but that other individuals could have committed some of the 122 thefts attributed to him by the government. In the report the base offense level was put at 4. *See* guidelines § 2B1.1(a). But there was an increase of 6 levels because the loss was between $20,001 and $50,000. *See* guidelines § 2B1.1(b)(1)(G). There was, however, a 2 level reduction for acceptance of responsibility, guidelines § 3E1.1(a), so that the total offense level was 8. Based on Parker's criminal history computation, the report indicated that the guidelines imprisonment range was six to 12 months, exactly in accord with Parker's understanding when he pleaded guilty.

There was an addendum to the report reflecting Parker's objections to it. Parker said that the thefts took place over a 15 month rather than two year period and involved 40 to 45 packages rather than the 122 the government claimed. The addendum indicated that Parker's attorney "requested that the Court make a factual finding as to the number of packages for which the defendant should be held responsible based on his plea of guilty." The report then indicated that Parker disputed only the number of packages taken and not the value of what he had taken. This, however, seems internally inconsistent as necessarily there would have to be some correlation between the number of packages and their value.

On October 27, 1988, the district judge made the tentative finding that Parker did knowingly steal approximately 45 packages. These findings, however, did not mention the value of what was taken.

Sentencing was on October 31, 1988. At that time Parker's attorney said that there was an objection about the number of packages. He correctly pointed out that the important issue was the value of what was taken because under guideline § 2B1.1(b)(1)(G) there would be a 6 levels increase if property valued at between $20,001 and $50,000 was involved. The attorney said that there was no way to know the value of what Parker took. The Assistant United States Attorney said that until that day there was no argument regarding value and he "would object to the amendment of the record with regard to any agreement about the amount and value of the items taken." He further said any change in value would invalidate the plea.

Parker's attorney then agreed that a change in value of what was taken would change the offense level. He said he advised Parker to plead guilty because he "did not have a viable defense at trial, that a jury believing he had taken those three packages and in addition to his admission, they could believe he took all 122 packages." The Assistant United States Attorney then said that: "There was a prior agreement, prior to even the filing of the indictment in this case, and at point two in the agreement, states the United States Attorney agrees to pursue no additional criminal charges against Edward William Parker for the theft of the 122 insured parcels which form the basis of the count stated in the indictment." He said that all charges would be in a single count and there was an agreement not to file additional counts. He explained that this arrangement was reached only because Parker's attorney came to the government early in the case.

Parker's attorney said that there were no stipulations reached in this case. Thus, the parties had not settled on the valuation issue. He said the plea agreement was that there would only be one count charged and Parker would forego trial. The Assistant United States Attorney said that, in

effect, Parker was attempting to withdraw his guilty plea. Parker's attorney then acknowledged that the plea agreement "clearly states the defendant will plead guilty to taking 122 packages with a value of $22,500.. And it is the very first item in the plea agreement." He also acknowledged that "the first time any mention of amount was made was in the sentencing brief delivered to the court on Friday, three days ago." He said, however, that "in light of the court's tentative findings there are only 45 packages which could be attributable to the theft by Mr. Parker, then I think it is a natural consequence there has to be some adjustment in the dollar value."

The judge then said: "Doesn't that invalidate the whole plea? Shouldn't I say the plea is withdrawn, and we will put it down for trial?" Parker's attorney responded: "Mr. Parker has no intention to withdraw the plea at this time." The Assistant United States Attorney said that the plea was to the indictment as charged, which included reference to the 122 packages worth $22,500 and Parker should be held to the plea. He pointed out that by reason of the plea agreement the government had only a single combined count rather than "a number of counts." The judge then said that the plea agreement Parker signed made specific reference to both the number of packages, 122, and the value involved, $22,-500. Thus, the fact issue was "encompassed within the indictment." Parker's attorney then said that in plea negotiating a defendant "either decides to accept or reject what is offered to him." But he said there was nevertheless a dispute over value.

The judge, however, said the plea of guilty was to the facts charged. When Parker's attorney suggested that the guidelines provided a procedure to resolve disputed facts, the judge said these procedures did not apply to facts that were established by the plea of guilty. Thus, he accepted the 122 package and $22,500 value figures. The judge then went through the offense level calculations and reached a total offense level of 8. He also concluded that as Parker's criminal history category was III the sentencing range was six to 12 months. Thus, the judge's conclusions as to the sentencing range were exactly those which Parker understood would apply when he pleaded guilty pursuant to his agreement. Furthermore, the six months sentence imposed was at the bottom of the range. Nevertheless, even though Parker received the most lenient sentence he could have anticipated when he pleaded guilty, he has appealed from the judgment of sentence of October 31, 1988.

■ Parker's contention on this appeal is not complicated. He contends that there was a dispute as to the value of the property taken which was not foreclosed by his plea. Hence, in his view as set forth in his brief, "the district court erred in failing to require the government to prove by a preponderance of the evidence standard the approximate monetary loss involved where the loss charged by the government was based upon the total valuation of 122 packages which had been found to be missing from the mail, and the district court had previously determined that Parker was responsible for the theft of 45 of those parcels." Accordingly, Parker contends that the district court should have used the dispute resolution procedures of Fed.R. Crim.P. 32(c)(3)(D) and guidelines § 6A1.3.

We will affirm.[1] There is no doubt but that in this case the plea agreement encompassed an understanding both as to the number of parcels taken and their value, as the parties said in the district court. There was no suggestion in the plea agreement that Parker reserved the right to challenge

---

1. Inasmuch as we view this matter as being controlled by the legal consequence of the plea of guilty which we hold binds Parker to the accuracy of the facts set forth in the indictment, our scope of review is plenary. *See United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989); *United States v. Ryan,* 866 F.2d 604, 610 (3d Cir.1989); *see also United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.), *cert denied,* 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236 (1985). Thus, we do not need to determine which provision of 18 U.S.C. § 3742(d) is implicated by this appeal.

the valuation of what he took.[2] The agreement, of course, was very advantageous to Parker as the government could have charged him in multiple counts, thus exposing him to more prosecutions. Furthermore, by pleading guilty to a single count he made certain that the double jeopardy protections would preclude his further prosecution or punishment for any of the stolen mail incidents between March 31, 1986, when the first packages were taken, until he was arrested on June 18, 1988. *See Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 1436–37, 63 L.Ed.2d 715 (1980); *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.1989). Indeed, the advantages of the agreement were evident as his attorney at the sentencing, when the valuation question was raised, made it clear that he would not withdraw the plea of guilty. Furthermore, Parker did not seek to withdraw the plea when the judge ruled that the indictment valuation would be used for sentencing and even on this appeal he does not request that the matter be remanded so that he may make application to withdraw his plea. Thus, we have no difficulty in holding him to the plea agreement for he seeks the benefits of it without its burdens.

 In reaching our result, we have not overlooked the circumstance that § 6B1.4 of the guidelines provides that a plea agreement may be accompanied by a written stipulation of facts relevant to sentencing. Rather, we conclude that where the agreement itself provides for a plea to the facts relevant to the sentencing, a separate stipulation is not necessary. It is well recognized that by pleading guilty a defendant admits the material facts alleged in the charge. *See United States v. Mathews*, 833 F.2d 161, 163 (9th Cir.1987); *Larios–Mendez v. Immigration and Naturalization Serv.*, 597 F.2d 144, 146 (9th Cir.1979). While we do not suggest that in a prosecution under 18 U.S.C. § 1708, the value of the property taken would be material in the sense that if Parker had gone to trial he

would have been entitled to an acquittal upon the government's failure to prove valuation,[3] in the context of this case the valuation was highly material. It was part of the agreement and the parties were well aware of its significance to the sentence. Indeed, Parker's attorney was able to advise him correctly of the sentence range, a calculation dependent on a level increase in turn dependent on the valuation of what was taken. Thus, we hold that Parker's plea of guilty admitted the value for purposes of his sentence and no further proof or stipulation was required.

The judgment of sentence of October 31, 1988, will be affirmed.

---

**2.** We rely in our recitation of the plea agreement on the description of it by the parties as it is not included in the appendix.

**3.** *See Welsh v. United States*, 404 F.2d 333 (5th Cir.1968).