UNITED STATES of America

v.

Jessie Wayne STANFORD.

No. 93–024.

United States District Court,
D. Maryland.

Dec. 30, 1997.

## MEMORANDUM OPINION

ROSENBERG, United States Magistrate Judge.

Jessie Wayne Stanford was charged in a criminal information with a violation of 18 U.S.C. § 641. The information reads as follows:

The United States Attorney for the District of Maryland charges that:

Between on or about September 9, 1988 and on or about June 26, 1991, in the State and District of Maryland, Jessie Wayne Stanford knowingly and willfully did convert to his own use the sum of One Hundred Dollars ($100.00) belonging to the United States Farmers Home Administration, an agency of the United States.

He appeared for initial appearance with retained counsel on February 8, 1993, at which time he also entered a plea of guilty under a written plea agreement set forth in a letter dated November 24, 1992, addressed to defendant's counsel. The plea bargain was approved by the defendant and his counsel on December 3, 1992. After completion of a presentence investigation, the defendant was sentenced on October 5, 1993, to a term of unsupervised probation for a period of one (1) year with certain special conditions and was also required to pay a mandatory special assessment of Twenty–Five Dollars ($25.00)[1]. No appeal was taken; however, on October 6, 1994, a post-conviction action was filed on behalf of the defendant, which the Court has construed to be a request to set aside his conviction on the ground that the record did not reflect a factual basis for the defendant's plea of guilty on the element of criminal

1. Under the plea bargain, the defendant was to pay restitution in the amount of Seven Thousand Eight Hundred Dollars ($7,800.00). The amount was paid in full prior to the Court's imposing sentence on October 5, 1993. The parties stipulated that the defendant accepted responsibility, and the government agreed to recommend a sentence at the low end of the applicable guideline. The government also agreed not to oppose a defense request for probation or home detention and reserved the right to seek an appropriate fine.

intent in violation of Rule 11(f) of the Federal Rules of Criminal Procedure.[2]

At the time the defendant entered his guilty plea, he was thirty-seven (37) years of age, was a high-school graduate and had completed college courses equivalent to approximately one and one-half years of a college education. He had been employed in law enforcement since 1980 to 1986 as a Deputy Sheriff with the Talbot County Sheriff's Department, Easton, Maryland, and was then employed as a police officer since 1986 with the Easton Police Department for the town of Easton, Maryland.

The Court is satisfied that the defendant's position is not well taken. The record before the Court reflects that the defendant understood the element of criminal intent and that there was a factual basis for the plea of guilty on this element. During the proceedings of February 8, 1993, the criminal information was read by the court to the defendant. He acknowledged that he had received a copy of the information, had read it, and understood the charge against him. During the Rule 11 inquiry, the Court explained the element of intent, and the defendant acknowledged his understanding of same. The tape recording of the proceedings reflects the following:

> Court: Now I indicated a few moments ago, that if we were to have a trial on a not guilty plea, the Government would have to prove the charge beyond a reasonable doubt. That means it would have to prove every essential element of the offense, and if any one of the elements was not proven beyond a reasonable doubt then you could not be convicted. The elements of the offense are set forth in the information and is very short and is very brief, you must understand that the core of the prosecution based upon my review of the plea bargain is that the Government is contending that you deliberately made false statements on certain Government forms that would entitle you to receive certain credits or money from the Government and that at the time you made the false statements you knew that they were false and you made the statement for the purpose of either getting credit or money from the Government that you were not lawfully or legally entitled to have. So that the charge is, essentially that you did knowingly and willfully convert to your own use the sum of One Hundred Dollars ($100.00), and from my review of the plea bargain, the actual amount was much greater than One Hundred Dollars ($100.00), so knowingly and willfully means that you did voluntarily with the purpose of doing something that the law forbids, doing something that was illegal and that you knew at the time that what you were doing was against the law. So that if you made an honest mistake, then it would not be knowingly and willfully. So what I am trying to tell you is that the Government would have to prove every element beyond a reasonable doubt and as far as your case is concerned, it would have to prove that you made the statement on the Government document knowing that the statements were false for the purpose of obtaining money or credit that you were not legally entitled to obtain, and if they cannot prove all of that beyond a reasonable doubt, then you cannot be convicted. Do you understand everything that I have just stated?

Defendant: Yes sir.

The tape recording of the proceedings also reveals the following:

> Court: Are you pleading guilty voluntarily?

Defendant: Yes sir.

> Court: Are you pleading guilty because you honestly believe that you are guilty of the offense charged?

Defendant: Yes sir.

Moreover, the plea bargain letter contained a stipulation of facts to support the factual basis for the plea. The stipulation stated:

---

2. Rule 11(f) provides: **Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea. See *infra.* p 8.

In May, 1988, Stanford applied for rural housing assistance from the United States Farmers Home Administration ("FmHA"), claiming that only his daughter lived in his Easton, Maryland household with him and that he was the only breadwinner residing there. Thereafter, in September, 1988, July, 1989, August, 1990, and June, 1991, Stanford signed FmHA interest credit agreements in which he repeated these claims, thereby qualifying for mortgage interest credits from FmHA totaling approximately Seven Thousand Seven Hundred Fifty–Two Dollars ($7,752.00). In fact, however, during virtually the entire period in which Stanford received these credits, the mother of his daughter also resided in his home and contributed her income to the household. Had Stanford truthfully reported this additional income, He would not have qualified for the credits he received from FmHA.

In questioning the defendant concerning the plea bargain, the record reflects the following:

Court: The plea bargain is set forth in a letter addressed to your attorney dated November 24, 1992, and signed by you on December 3, 1992. Let me ask you whether you are satisfied that letter that you signed constitutes the entire plea bargain you have with the Government in connection with this case?

Defendant: Yes sir.

Court: Have you read the plea bargain letter word for word?

Defendant: Yes sir.

Court: Have you also discussed it with your attorney?

Defendant: Yes sir.

Court: Is there anything about the plea bargain that you do not understand?

Defendant: No sir.

At the conclusion of the Rule 11 inquiry, the following appears:

Court: Mr. Stanford do you have any questions that you would like to ask me?

Defendant: No sir.

Court: is there anything that you do not understand?

Defendant: No sir.

Court: Would you like to continue with your guilty plea or do you desire to withdraw the guilty plea?

Defendant: I would like to continue.*

The presentence investigation described the offense conduct by setting forth the stipulation as stated above, and in addition, the offense was further described as follows:

The defendant, during the presentence interview, admitted to the stipulated statement of facts as stated above. He said that when he had initially applied for the subsidy, provided by the United States Farmers Home Administration, the mother of his daughter, Ms. Carolyn Thomas, then resided in the home. However, at the time the credit agreement was approved, Ms Thomas had then gone to live with her sister. During this initial stage of application with the FmHA, the defendant and Ms Thomas were then having serious personal differences, he decided not to put her name on the FmHA paperwork.

Several months later, Ms Thomas moved back in with the defendant several months after the approval of the mortgage by FmHA, and for the duration of the period of the offense, resided with the defendant at his residence. The defendant cited financial pressures which contributed to his commission of the offense conduct, namely that the FmHA subsidy afforded him an additional One Hundred Fifty Dollars ($150.00) monthly cash flow which he used for household expenses, and for the support of his four children.

When the defendant appeared with his counsel for sentencing on October 5, 1993, he and his counsel acknowledged that they had an opportunity to read and discuss with each other the presentence investigation. (See,

---

* The Court then accepted the defendant's guilty plea and stated, "The court is satisfied that the defendant is pleading guilty voluntarily with an understanding of the nature of the charge and the consequences of his plea. The court is satis- fied that there is a factual basis for the guilty plea based upon the stipulation in the plea bargain letter, and accordingly, the guilty plea is accepted."

Acknowledgment of Disclosure and Discussion of Presentence Investigation and Waiver of Ten Day Period dated October 4, 1993). Defendant's counsel stated upon inquiry by the Court that the defense had no additions or corrections to any of the information in the presentence investigation. Upon allocution, the tape recording of the proceedings reflects the following:

> Defendant: I didn't have any intention of causing a problem, that I caused for myself, I was only trying to help someone that I thought was in need, that person just happened to be a friend of mine and she needed some time to save up some money so that she could get her own apartment, and I didn't want to see her in the street. She was having a hard time trying to find a place to stay, my daughter, the mother of my daughter and I thought it would be OK for awhile so she could save up some money.

> Court: Well, I think it probably would have been OK as long as you had given truthful information, if it's true that when you first applied for the loan, ah, she wasn't going to be staying there, you were truthful then, but once she came there I am assuming that you have to submit an application or statement on a regular basis, and if she is there then you have to answer the question truthfully, and if in fact as a result of your answering the question that doesn't have any bearing on whether she will be able to stay there or not, it only has a bearing on how much credit you are going to get from the Government.

> Defendant: Right? (The response is unclear)

> Court: Alright, is there anything else?

> Defendant: At the time that I didn't want to, my understanding was that if someone was staying with you, you put their name on the contract and because we was having a serious problem and we weren't getting along, I didn't want to put her name on the contract, I was hoping that, she would get herself straightened out and gone on about her business and I wouldn't have to go through all those changes and I wished I had done that, I would rather go through those changes than hurt myself through these problems I have today, sir, and I am sorry that I have done that and put my career on the line because of my mistake.

The motion filed on behalf of the defendant was a request to substitute a plea of *nolo contendere* for his plea of guilty. The government opposed this request, and it was agreed that the Court would consider the defendant's motion as a motion to withdraw his guilty plea. Under Rule 32(e) of the FRCrP., such a request after sentence is imposed is to be considered a motion under 28 U.S.C. § 2255. Under the authority of *United States v. Bryson*, 981 F.2d 720 (4th Cir.1992), the parties consented to the exercise of jurisdiction by a United States Magistrate Judge, which was approved by a United States District Judge on October 15, 1997, by order of reference.[3]

In preparing a draft of this opinion, the court noted that sentence was imposed on October 5, 1993; however, the defendant's motion was not filed until October 6, 1994, which was a date beyond the expiration of the defendant's sentence of unsupervised probation for a period of one (1) year. Under the circumstances, it is likely that the defendant was not "in custody" when his motion was filed, and custody is a necessary jurisdictional element for 28 U.S.C. 2255 to apply. Accordingly, the defendant may not seek relief under this provision. See *Maleng v. Cook*, 490 U.S. 488, 492, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).

Under the circumstances, there may not exist any procedural vehicle that would permit the Court to grant the defendant the relief that he seeks. Relief may be available through a writ of error *coram nobis* to vacate a conviction after a sentence has been served

---

3. It is strongly recommended by this Court that Congress pass legislation to enable a United States Magistrate Judge to decide any post-conviction matter attacking a conviction by a United States Magistrate Judge for an offense within the Magistrate Judge's trial jurisdiction without the necessity of obtaining the parties consent.

in which a defendant is no longer considered to be "in custody."

[The Supreme] Court held that the extraordinary remedy should be issued, however, "only under circumstances compelling such action to achieve justice." [*U.S. v. Morgan,* ]346 U.S. [502] at 511, 74 S.Ct. [247] at 252[98 L.Ed. 248 (1954)]. An error "of the most fundamental character" must have occurred to warrant issuing the writ, and no other remedy may be available.

*U.S. v. Mandel,* 862 F.2d 1067 (4th Cir.1988), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). It is clear that the defendant cannot meet the test required for *coram nobis* relief.

Furthermore, in order to obtain collateral relief, it may also be incumbent upon the defendant to show that the conviction will impose upon him significant legal collateral consequences; such as, the loss of civil rights.

"The term 'civil rights' generally includes the right to vote, the right to hold public office, and the right to serve on a jury. *See, United States v. Cassidy,* 899 F.2d 543, 549 (6th Cir.1990) ... Maryland, unlike many States, has no general restoration of rights statute for criminal offenders nor does it issue to felons who have completed their sentences certificates of discharge restoring their rights. There are instead specific statutory sections addressing various civil rights." *United States v. Hassan El,* 5 F.3d 726, 734 (1993), *cert. denied,* 511 U.S. 1006, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994).

His misdemeanor conviction will not affect his civil rights under the laws of the State of Maryland. *See* Md. Const. art. 1 §§ 4 and 12; Md.Code Ann. Art. 33, § 3–4(c); Md.Cts. & Jud.Proc.Code Ann. § 8–207(b). Furthermore, the defendant's misdemeanor conviction does not impose a legal impediment to his being employed as a police officer in the State of Maryland. *Stanford v. Md. Police Training,* 346 Md. 374, 697 A.2d 424, 428, 432 (1997).

■ At *present,* the Court is unaware of any significant legal collateral consequences that would entitle the defendant to *coram nobis* relief Of course, it may be contended that if convicted in the future of another offense, the instant case could be considered in determining an appropriate sentence, and under the Federal Sentencing Guidelines, the conviction would count as one (1) criminal history point. Although perhaps debatable, the conviction may also be considered available for impeachment. These matters are purely speculative, and under *Lane v. Williams,* 455 U.S. 624, 630–634, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), this would not be sufficient to prevent the matter before the Court from being considered moot. However, there are other Supreme Court cases which indicate that the matter may not be considered moot. See *Sibron v. State of New York,* 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Rutledge v. U.S.,* 517 U.S. 292, 116 S.Ct. 1241, 1248, 134 L.Ed.2d 419 (1996).[4] Nevertheless, the Court finds it unnecessary to determine whether *coram nobis* is an available procedural vehicle, and also finds it unnecessary to determine whether the issue is moot as it has concluded that on the merits and under the lesser standard applicable to motions under 28 U.S.C. § 2255, the defendant is not entitled to any relief based upon the records and files of the

---

4. In addition, the court suggests that it may be appropriate to require relief to be granted under *coram nobis* only upon a showing by a defendant that if the case were to be tried "that it is more likely than not that no reasonable juror would have convicted him" based upon the totality of the available evidence. Without deciding the question, it may be appropriate to require the defendant to prove that he is actually innocent. In this connection, in another context, see *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

If this were required, it is highly unlikely that the defendant would be able to meet his burden of proof, especially when one considers the stipulation contained in the written plea agreement, the statement he gave to the United States Probation Officer and the written statement given under oath to the Government investigators on January 15, 1992. This last item has been included as an Expansion of the Record but did not have to be considered by the court in determining this case and did not affect the Court's ultimate disposition. The affidavit submitted by the defendant with his motion, in light of the contrary evidence, simply is not believable.

case. See *Raines v. United States,* 423 F.2d 526 (4th Cir.1970).

As the defendant is only attacking the factual basis for his guilty plea, the Court initially was of the opinion that this matter was controlled by *U.S. v. Willis,* 992 F.2d 489 (4th Cir.1993) *cert. denied,* 510 U.S. 857, 114 S.Ct. 167, 126 L.Ed.2d 127 (1993). In *Willis* the Court stated at p. 490:

> The principle guiding disposition of this case has been stated by the United States Supreme Court as follows:
>
> > A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.
>
> *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). A voluntary and intelligent plea of guilty "is an admission of all the elements of a formal criminal charge," *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), and constitutes an admission of all "material facts alleged in the charge," *United States v. Johnson,* 888 F.2d 1255, 1256 (8th Cir. 1989) (quoting *United States v. Parker,* 874 F.2d 174, 178 (3d Cir.1989)) ... Furthermore, a guilty plea constitutes a waiver of all nonjurisdictional defects, see *Parker v. Ross,* 470 F.2d 1092, 1093 (4th Cir.1972), including "the right to contest the factual merits of the charges." *United States v. Freed,* 688 F.2d 24, 25 (6th Cir.1982).

This circuit has followed these basic and long-standing principles but has not specifically announced adherence to them through a published opinion. We now take the opportunity to do so in order to erase any ambiguity that may have existed. A knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes the elements of the offense and the material facts necessary to support the conviction.

Notwithstanding the above from *Willis,* the Court subsequently indicated that *Willis* was not controlling on a direct appeal which challenged the factual basis to support a guilty plea based upon an alleged violation of Rule 11(f). The Court stated:

> A challenge premised on the failure of the district court to comply with Rule 11(f) was not raised in *Willis,* and thus a challenge to the sufficiency of the evidence based upon Rule 11(f)is not foreclosed by *Willis.*

*United States v. Mitchell,* 104 F.3d 649, n. 2 (4th Cir.1997).

On the other hand, even on direct appeal from a denial of a motion to withdraw a guilty plea, prior to the imposition of sentence, a defendant is faced with a formidable barrier when attempting to attack a plea of guilty. The Fourth Circuit recently stated in *United States v. Wilson,* 81 F.3d 1300, 1308 (1996) the following:

> In this case appellant stipulated to a lengthy and detailed set of facts. The trial court satisfied itself as to the factual basis for the plea, and assured itself that appellant understood the indictment against him. The court considered the education, intelligence and sophistication of the appellant, and determined that his plea was knowing and voluntary. Appellant's later claim that he did not have the requisite intent for money laundering is not sufficient to set aside the plea. As we have stated previously, "[s]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea." *Lambey,* 974 F.2d at 1395 (quoting *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)). We find no error in the district court's determination that appellant's plea was knowingly and voluntarily made.

Notwithstanding this formidable barrier on direct appeal, the barrier is even substantially greater on a collateral attack. On collateral attack, the test is set forth in *United*

*States v. White,* 572 F.2d 1007 (4th Cir.1978) at page 1009:

> While our original opinion proceeded on the assumption that a district court's failure to comply with Rule 11 would give rise to the same relief on collateral attack as on direct appeal, we are now persuaded to the contrary. Along with the Second, Fifth, Eighth and Tenth Circuits, we agree that *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting from *Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)), establishes that " 'collateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error." Absent a mistake of constitutional or jurisdictional dimensions, "the appropriate inquiry [under 28 U.S.C. § 2255] was whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice' ...." 417 U.S. at 346, 94 S.Ct. at 2305 (quoting from 368 U.S. at 428, 82 S.Ct. at 468). Accordingly, our inquiry here is not simply whether Rule 11(c)(5) was observed; the record establishes that it was not. Rather, our inquiry is whether White suffers prejudice of constitutional magnitude as a result of non-observance of the rule.

In addition, the test has been described in *United States v. Morrow,* 914 F.2d 608 (4th Cir.1990) at page 614 as follows:

> For a violation of Rule 11 to be collaterally attacked, it must result in a complete miscarriage of justice or be inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

The position taken by the Fourth Circuit is undoubtedly correct and in accordance with the leading Supreme Court case of *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). The following quotations, in addition to that set forth in *Willis* above, from *Broce* are instructive:

If the answer is in the affirmative that [the plea was both counseled and voluntary] then the conviction and the plea, as a general rule, foreclose the collateral attack. There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence. 488 U.S. at p. 569.

In holding that the admissions inherent in a guilty plea "go only to the acts constituting the conspiracy," 781 F.2d at 796, the Court of Appeals misapprehended the nature and effect of the plea. A guilty plea "is more than a confession which admits that the accused did various acts." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It is an "admission that he committed the crime charged against him." *North Carolina v. Alford,* 400 U.S. 25, 32, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime. That is why the defendant must be instructed in open court on "the nature of the charge to which the plea is offered," Fed. Rule Crim. Proc. 11(c)(1), and why the plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts," *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). 394 U.S. at p. 470.

In sum, as we explained in *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." That principle controls here. Respondents have not called into question the voluntary and intelligent character of their pleas, and therefore are not entitled to the collateral relief they seek. 467 U.S. at p. 508.

■ Based upon the above, it is clear that a guilty plea that is entered voluntarily, knowingly, intelligently and with counsel ordinarily may not be collaterally attacked on any grounds except where on the face of the record the Court has no power to enter the

conviction or impose the sentence. Accordingly, any defect under Rule 11(f) concerning any claimed lack of a factual basis for the plea is not a ground for collateral relief. Furthermore, it may well be that such a claim would rarely, if ever, be a ground for relief even on direct appeal. The factual basis for the plea is not a core concern under the constitution or Rule 11. As indicated by the Fifth Circuit there are three (3) core concerns:

(1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of the plea. See *United States v. Shacklett*, 921 F.2d 580, 582 (5th Cir.1991). . . .

Many of the cases analyzing a defendant's Rule 11 challenges to the acceptance of a guilty plea do not distinguish the requirements of 11(c)(1) from those of 11(f). This is understandable because the two sections address related concerns. Section (c) is the textual basis for the second core concern and requires the Court to

address the defendant personally in open court and inform him of, and determine that he understands, the following: (1) the nature of the charge to which the plea is offered. . . .

Fed.R.Crim. P. 11(c). This section requires a court to participate personally in a conversation with the defendant to determine if he understands the nature of the charges against him. *Shacklett*, 921 F.2d at 582. . . .

Nonetheless, section (f) (factual basis) and section (c)(1) (understanding the nature of the charges) are distinct requirements of Rule 11. Their similarity does not elevate Rule 11(f) to core concern status, and accordingly, noncompliance with Rule 11(f) does not automatically affect a defendant's substantial rights. In the instant case, after careful review of Adams' arguments, we note that Adams never contends that the court failed to explain the nature of the charges as required by Rule 11(c)(1). Likewise, she makes no argument that the court's failure to establish a factual basis in violation of Rule 11(f) somehow confused or misled her as to the nature of the

charges against her, thereby implying a violation of Rule 11(c)(1). Because the court's failure to comply with Rule 11(f) is not a core concern, and is not suggested by Adams to have somehow raised a core concern, we apply the harmless error standard of Rule 11(h) in reviewing that failure.

*United States v. Adams*, 961 F.2d 505, 510–512 (5th Cir.1992).

The Fourth Circuit seems to have accepted the position of the Fifth Circuit in *Adams* in the recent case of *United States v. Wilson, supra*, at pp. 1308–1309. The *Wilson* court stated:

Appellant argues that he never possessed the intent to conceal the proceeds of the food stamp scheme. The question that really matters, however, and the one that appears to have escaped so many courts in the pursuit of pure procedural perfection, is whether appellant believed, at the time of the taking of his plea, that there was a substantial risk that a jury could find that he possessed the requisite intent. A defendant, in pleading guilty, does not have to believe that he committed all of the acts and possessed the statutorily-prescribed intent for the crime charged. The purpose of the plea hearing is to guarantee that the defendant understands the nature of the charges against him so that he can knowingly and voluntarily agree to plead guilty, rather than face the risk of a reasonable jury finding that he possessed the necessary "mens rea" and committed the "actus reus." In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court stated the following:

[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Nor can we perceive any material difference between a plea which refuses to admit commission of the criminal and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interest requires entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Id. at 37, 91 S.Ct. at 167 (implying that a district court must satisfy itself of the factual basis for the plea rather than rely on defendant's protestations of innocence).

Appellant's claim that he never intended to conceal the proceeds of the food stamp scheme, therefore, warrants no remedy, even if this issue had been raised at the time of his plea, and even if his argument on the intent necessary for conviction were valid. It is clear from the plea hearing, as well as the subsequent hearing on the motion to withdraw, that appellant understood the risk of presenting the case to a jury. Rather than facing this risk, appellant chose to plead guilty to a single offense. His later claims exhibited no more than cold feet brought about by the realization that the guideline application in his pre-sentence report required immediate and significant incarceration. This is not a basis for withdrawal of a plea of guilty. Whether appellant made a knowing and voluntary plea of guilty is a question which the trial judge must determine at the time that the plea is taken.

In addition, the *Adams* court, on direct appeal, held that the factual basis for the plea was not apparent from the record that was before the district court when the guilty plea was taken. Nevertheless, the factual basis for the plea was contained in the record on appeal; and accordingly, any error that occurred in the district court was deemed to be harmless. *Adams* at pp. 512–513.

Although not an issue to be resolved in the instant case, in light of the core concerns, the importance of plea bargaining in our Criminal Justice System and the fact that a defendant may waive most legal rights, it may also be contended that the court, in the exercise of its discretion, may accept a guilty plea so long as the plea is entered knowingly, voluntarily, intelligently and with the assistance of counsel, even in a situation in which the factual basis may not technically be adequate to support the charge to which the plea is entered. This would likely be appropriate in those instances where, pursuant to a plea bargain to a lesser charge (perhaps a misdemeanor), the facts would support a more serious charge (perhaps a felony), somewhat closely related to the lesser charge to which the plea was entered. The interests of justice may be served in this situation although the facts would not support all of the elements of a lesser charge but would support all of the elements of a greater charge. This may be especially true when dealing with the element of intent, which could include the element of willfulness which may have different meanings under different statutes. Sometimes its precise definition may be an elusive concept.[5]

This Court suggests that Rule 11's requirement of a factual basis for a guilty plea can be satisfied, in some circumstances, in this situation, and the Court should be permitted to accept or reject the tendered guilty plea in the exercise of its discretion just as the Court may accept a guilty plea when the defendant claims innocence. See *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). See also *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); (statements made by defendant in plea discussions could be used at trial for impeachment); *United States v. Broce, supra* 488 U.S. at pp. 572, 576.

In the instant case, the defendant was permitted to plead guilty to a misdemeanor rather than a more serious felony offense. The parties stipulated to his acceptance of responsibility. If he had not accepted re-

---

**5.** Some examples concerning the definition of willfulness as an element of an offense are described in *Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). *Bates v. United States*, — U.S. —, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997); *United States v. Sparks*, 67 F.3d 1145 (4th Cir.1995); *United States v. Daughtry*, 48 F.3d 829 (4th Cir.1995), *remanded* 516 U.S. 984, 116 S.Ct. 510, 133 L.Ed.2d 419 (1995) *vacated and remanded on other grounds* 91 F.3d 675 (4th Cir.1996).

sponsibility, he very well may have received a term of imprisonment upon conviction. The offense could be considered somewhat aggravated by the fact that he was a police officer. Without credit for acceptance of responsibility, his offense level would have been increased to a level ten (10), which would have resulted in a guideline range of six (6) to twelve (12) months rather than zero (0) to six (6) months. Under the increased guideline range, even if the court determined not to impose a term of imprisonment, it was required to impose, at a minimum, six (6) months of home confinement. See U.S.S.G. § 5C1.1.

It is clear that the defendant's protestation of innocence is merely an afterthought in light of the fact that his motion was not filed until after he completed his sentence of probation and lost his position as a police officer. See *Stanford v. Maryland Police Training supra*. It may well be that his record as a police officer was not as commendable as originally thought, and his conviction may have merely been the straw that broke the camel's back.

It is significant that during the Rule 11 inquiry, the criminal information was read by the Court to the defendant, he acknowledged that he had read it himself and understood the charge against him. The Court took great pains during the inquiry to explain the element of criminal intent as it related to the charge, and the defendant conceded that he understood what the Court had explained to him. In addition, it is conceivable that the Court's explanation of "willfully" may have been broader than what the law actually requires for the term as it is used in the indictment. It may not require a defendant to know that his conduct was against the law. See footnote (5) *supra*.

The cases hold that the Court may consider anything of record in determining whether a factual basis exists. *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir.1991) *cert. denied*, 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992), *United States v. Lumpkins*, 845 F.2d 1444, 1450–1451 (7th Cir. 1988). See also *United States v. Broce, supra* 488 U.S. at p. 571 n*.

It is also clear that the record before the Court during the Rule 11 colloquy established a factual basis for the defendant's plea of guilty. The defendant admitted that he was pleading guilty because he honestly believed that he was guilty. The stipulation of facts set forth in the written plea bargain was before the Court, and the defendant admitted that he had read the plea bargain word for word, had discussed it with his attorney, and understood what was contained in the plea bargain letter. Furthermore, when the defendant appeared for sentencing, the presentence investigation contained additional factual information provided by the defendant which further amplified the factual basis for his guilty plea as stated in the stipulation. The defendant and his counsel agreed that they had had an opportunity to read and discuss the presentence investigation with each other, and they offered no additions or corrections to any of the information in the presentence investigation when given an opportunity to do so. Furthermore, the present record establishes a factual basis for the plea, and assuming error, such error is harmless. *United States v. Adams supra.*

Based upon the defendant's personal characteristics, see *United States v. DeFusco*, supra at p. 117, and *United States v. Wilson*, supra at p. 1308, and the record of the proceedings, it is manifest that the defendant is entitled to no relief. His claim is not an appropriate subject for collateral attack. On the merits it is also clear that no error occurred, and that a factual basis for the defendant's plea of guilty had been established beyond any reasonable doubt prior to the imposition of sentence, and assuming error, any such error is harmless.

The Court will issue a separate order denying the defendant's motion for the reasons stated herein.