697 A.2d 424

Jessie Wayne STANFORD

v.

**MARYLAND POLICE TRAINING AND
CORRECTIONAL COMMISSION.**

**No. 73, Sept. Term, 1996.**

Court of Appeals of Maryland.

July 28, 1997.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for Petitioner.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General; Stuart M. Nathan, Assistant Attorney General, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

CHASANOW, Judge.

We granted the request for a writ of certiorari in this case to consider whether a police officer certificate, issued by the

Maryland Police Training Commission pursuant to Maryland Code (1957, 1997 Repl.Vol.), Article 41, § 4–201(d)(6), is automatically "revoked" upon the officer's termination of employment with a law enforcement unit. For the reasons set forth below, we conclude that it is.

## I.

The petitioner, Jessie Wayne Stanford, is a former member of the Easton Police Department. On February 8, 1992, Stanford, a fifteen-year police veteran, pleaded guilty to a charge of misdemeanor theft of federal government property in violation of 18 U.S.C. § 641. The charge arose from misrepresentations made by Stanford on an application for rural housing assistance from the United States Farmers Home Administration (FHA). Stanford indicated to the FHA that he was the sole income earner in his household; based on these representations, he received approximately $7,752.00 in mortgage interest credits. In fact, Stanford shared his home with a woman whose contributions to the household finances, if properly disclosed, would have affected Stanford's eligibility for housing assistance. The plea agreement, pursuant to which Stanford was convicted, incorporated a promise to make restitution. In addition, Stanford was sentenced to one year of unsupervised probation.

As a result of Stanford's conviction, the Easton Police Department terminated his employment on April 29, 1994. Approximately one week later, Stanford was offered a position with the St. Michael's Police Department. The effective date of Stanford's employment with the St. Michael's Police Department was May 10, 1994. Hence, there was a ten-day period during which Stanford was not a member of any law enforcement unit.

On May 16, 1994, Chief Wade A. Roche of the St. Michael's Police Department notified the agency that oversees police officer certification, the Police Training Commission (also "the Commission"), that his department had hired Stanford. Chief Roche urged the members of the Police Training Commission

to give Stanford "a second chance" in the event they "decide to take [him] to a decertification hearing." In response, the Police Training Commission invited Chief Roche to attend an upcoming meeting, at which the issue of Stanford's recertification was scheduled to be discussed. The Police Training Commission's characterization of the issue as one of recertification, as opposed to decertification, goes to the heart of the dispute in this case and will be resolved below.

Stanford did not receive notice of, and did not attend, the meeting at which his certification was slated for discussion. Following a review of Stanford's misdemeanor conviction and a reading of several letters of support, a motion to certify Stanford was made and seconded. The motion did not carry, however, and this litigation ensued.

On June 28, 1994, in the Circuit Court for Baltimore County, Stanford filed a petition seeking judicial review of the Commission's action. He subsequently filed an amended petition and petition for writ of mandamus, alleging, among other things, that because he satisfied the requirements for certification under Maryland law, the Police Training Commission acted illegally in refusing to certify him. Stanford also asserted that the Police Training Commission should have provided him with notice and an opportunity to be heard prior to "decertifying" him. The trial judge granted summary judgment in favor of the Police Training Commission, and Stanford appealed to the Court of Special Appeals.

On appeal, Stanford maintained that the action taken by the Commission at the June 7 meeting was a revocation of his certification. The significance of this contention is that Maryland law requires compliance with certain procedures prior to the Commission's revocation or suspension of an officer's certificate. Specifically, the Commission must "hold a hearing, in compliance with the Administrative Procedure Act...." Md.Code (1957, 1997 Repl.Vol.), Art. 41, § 4–201(g)(2).[1] In

---

1. Unless otherwise indicated, all statutory references are to Maryland Code (1957, 1997 Repl.Vol.), Article 41.

addition, the officer must receive notice of the hearing, including a statement of the grounds for the contemplated revocation or suspension. § 4–201(g)(3). It is undisputed that the June 7 meeting did not conform to the statutorily-prescribed procedures for revocation hearings.

The Court of Special Appeals disagreed with Stanford's claim that the Commission revoked his certification on June 7. Rather, after examining the relevant statutory language, the court concluded that Stanford's certification was *automatically* revoked upon his termination from the Easton Police Department:

> "Although [the statute] is not as clear as it could be as to what happens to a police officer's certification when the officer's employment is terminated by a law enforcement agency, ... the statutory scheme behind the statute reveals that the legislat[ure] did not intend that an individual who ceases to be a police officer continue[ ] to hold his or her certification." (Footnote omitted).

The intermediate appellate court concluded that the meeting of June 7 did not constitute a decertification hearing, the characterization urged by Stanford, but rather amounted to a recertification hearing. Because there is no requirement that an officer be provided with notice and opportunity to be heard with regard to his or her recertification, the Commission's action of June 7 was held to be proper.[2]

■ This Court granted certiorari to consider the pivotal issue of whether a police officer's certificate is automatically "revoked" upon the termination of the officer's employment with a police department. Stanford presents essentially the same arguments to this Court as he did below; namely, that the Commission improperly revoked his certification at the meeting of June 7, and that the Commission violated Maryland law and principles of due process by depriving him of certification without notice and an opportunity to be heard. For

---

**2.** The court further found that Stanford's "due process argument fails because his termination followed a trial board hearing that apparently conformed with the Law Enforcement Officers' Bill of Rights...."

reasons that we shall explain, we agree with the Court of Special Appeals that termination of employment effects an automatic "revocation" of certification. Stanford thus lost his certification upon his separation from the Easton Police Department on April 29, not as a result of the Commission meeting of June 7.

## II.

### A.

The statutes pertinent to police officer certification do not explicitly provide that termination of employment invalidates an officer's certificate. Stanford seizes upon the absence of an express statement to this effect as the basis for his argument. Invoking the rule of statutory construction that the express authorization of one action implies exclusion of another, *see, e.g., Mossburg v. Montgomery County, Md.*, 329 Md. 494, 505, 620 A.2d 886, 892 (1993), Stanford notes that § 4–201 explicitly sets forth a number of circumstances under which an officer may lose his or her certification, but does not include termination of employment among them. The implication, Stanford contends, is that the legislature did not intend termination to result in automatic decertification; otherwise, this potentiality would have been included among the various provisions of § 4–201.

■ The mere failure to provide expressly for decertification upon termination, however, does not mean that the legislature intended certification to continue. "That which necessarily is *implied* in the statute is as much a part of it as that which is expressed." *Soper v. Montgomery County*, 294 Md. 331, 335, 449 A.2d 1158, 1160 (1982)(emphasis added)(superseded in part by statute)(citing *Guardian Life Ins. v. Ins. Comm'r*, 293 Md. 629, 643, 446 A.2d 1140, 1148 (1982); *Chillum–Adelphi v. Board*, 247 Md. 373, 377, 231 A.2d 60, 62 (1967); *Restivo v. Princeton Constr. Co.*, 223 Md. 516, 525, 165 A.2d 766, 771 (1960)). Accordingly, the Commission argues that the statutory provisions pertinent to police officer certification "collectively ... demonstrate ... the General Assem-

bly's intent in linking a police officer's certification with his or her continuing employment as a person authorized to enforce the general·criminal laws...." More specifically, the Commission contends that because "police officer" is statutorily defined as "a person who has the authority to enforce the general criminal laws of this State *and* is a member of" one of twelve enumerated "law enforcement units," Stanford could not have remained certified as a "police officer" when he was no longer a member of a law enforcement unit. In further support of its position, the Commission singles out several regulations that indicate that termination brings about an automatic revocation of certification. These regulations have survived several amendments to § 4–201, which, the Commission asserts, evidences implicit legislative approval of the Commission's interpretation of the effect of termination.

## B.

As the preceding summary of the parties' arguments indicates, this case involves an issue of statutory construction. "As we have so often said, the cardinal rule of statutory construction is to ascertain and effectuate legislative intention." *State v. Crescent Cities Jaycees,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993). In determining legislative intent, "the court's inquiry begins with the words of the statute...." *Tidewater v. Mayor of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468, 472 (1995). The statutory language is not read in isolation, but "in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence." *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989); *see also Warsame v. State,* 338 Md. 513, 519, 659 A.2d 1271, 1273 (1995); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632 (1987). Applying these principles to the instant case, we conclude that the General Assembly intends a police officer's certification to be invalidated upon termination of employment with a law enforcement agency.

## 1.

Our analysis begins with a review of the statutory provisions under which the Commission acts and pursuant to which certificates are issued. The Police Training Commission was created in an effort by the legislature to improve the educational and clinical training of police officers. Chapter 286 of the Acts of 1966. Hoping to redress what it perceived as "a serious need for improvement in the administration of law enforcement," the General Assembly established the Commission for the purpose of developing "a minimal standards educational and training program." *Id.* The specific powers, responsibilities, and duties of the Commission presently are codified at § 4–201 and include such tasks as adopting standards for the approval of police training schools; certifying and periodically inspecting training schools; developing curriculum and minimal educational requirements for training schools; prescribing minimum qualifications for police school instructors; and verifying the satisfactory completion of training programs by police officers. § 4–201(d)(1)—(5).

Most importantly for purposes of the case *sub judice*, the Commission is responsible for the certification of police officers. Maryland law prohibits, with limited exceptions, the employment of any individual as a police officer who is not certified by the Commission. § 4–201(j). Those individuals who have "[s]atisfactorily met the Commission's standards; or ... [p]rovided the Commission with sufficient evidence [of satisfactory completion of] a training program in another state of equal quality and content as required by the Commission" are eligible for certification. § 4–201(d)(6). The precise standards for certification are established by regulation[3] pursuant to the Commission's express rule making authority. *See* § 4–201(d)(11).

---

**3.** *See, e.g.,* Code of Maryland Regulations (COMAR) 12.04.01.05 (Minimum Standards of General Training at the In–Service Level for Police Officers); COMAR 12.04.01.06 (Minimum Standards for the Training of Entrance–Level Supervisory Police Personnel); COMAR 12.04.01.07 (Minimum Standards for the Training of Entrance–Level Administrative Police Personnel).

In conjunction with the power to issue certificates, the Commission possesses the authority to revoke, suspend, or recall certificates under certain conditions. Pursuant to § 4–201(d)(7), for example, the Commission is empowered to revoke or suspend a certificate "if the police officer has violated or has failed to meet the Commission's standards, including having knowingly failed to report suspected child abuse in violation of § 5–704 of the Family Law Article." Furthermore, if the suspension or revocation is prompted by the occurrence of certain enumerated events, the Commission may recall the certificate. The specific grounds for recall are:

"(1) The certificate was issued by administrative error;

(2) The certificate was obtained through misrepresentation or fraud;

(3) The holder has been convicted of a felony; or

(4) The holder has been convicted of a misdemeanor for which a sentence of imprisonment for more than 1 year may be imposed."

§ 4–201(*l*).

Even if the Commission does not initiate an action for revocation, suspension, or recall, an officer may lose his or her certification through "automatic lapse." Section 4–201(h) provides:

*"Automatic lapse of officer's certificate; recertification.—* (1) A police officer's certificate . . . shall automatically lapse 3 years from the date of the previous certification."

A police officer's certificate thus automatically expires 3 years after issuance. Section 4–201(i) suggests that the failure to meet the Commission's standards may also cause a certificate to lapse. That section states that "[i]f the certificate is in danger of lapsing or has lapsed *because of the police officer's failure to meet the Commission's standards,* the police officer may request a hearing. . . ." (Emphasis added).

Section 4–201 thus sets forth a number of ways in which an officer could lose his or her certification. Stanford urges us to find significance in the failure to include termination of employment among these express provisions. In a number of

cases, we have indeed recognized that "where the Legislature in a statute expressly authorizes a particular action under certain circumstances, the statute ordinarily should be construed as not allowing the action under other circumstances." *Mossburg*, 329 Md. at 505, 620 A.2d at 892; *see also Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 96, 453 A.2d 1191, 1195 (1982)(observing that "the Legislature's enumeration of one item, purpose, etc. ordinarily implies the exclusion of all others"); *American Security v. New Amsterdam*, 246 Md. 36, 41, 227 A.2d 214, 217 (1967)(referring to principle that "the express imposition of one qualification shows a deliberate rejection of any other").

In *American Security*, for example, this Court held that a mortgagee was not a "purchaser" for purposes of a statute that protected property sold to bona fide purchasers from attachment by the seller's creditors. 246 Md. at 41, 227 A.2d at 216–17. In reaching this decision, the Court explained:

"Had the legislature intended to include a mortgagee within the terms of the statute, it would undoubtedly have done so, and since it did not, the implication is that mortgagees were purposely excluded."

*Id.* In contrast to those cases in which this maxim, sometimes expressed as "expressio unius est exclusio alterius," has been applied, however, the statutory language in the instant case does not support the inference that the General Assembly purposely excluded termination of employment such that an officer's certification would survive his or her separation from a law enforcement unit. Stated otherwise, we are unable to conclude that if the legislature had intended termination of employment to invalidate automatically an officer's certification, it necessarily would have included such a provision in § 4–201.

### 2.

Preliminarily, we note that the provisions dealing with the Commission's specific power to revoke, suspend, or recall certificates do little, if anything, to resolve the question presented in this case. The mere fact that the Commission is not

expressly authorized to revoke certification upon termination of employment as a law enforcement officer does not mean that termination of employment does not *automatically* "revoke" certification.

The more relevant inquiry is the significance of the failure to include termination of employment in the "automatic lapse" provisions, an omission that Stanford cites in support of his position. The primary goal of the provisions dealing with automatic lapse seems to be to ensure that active police officers receive adequate training on a regular basis. The automatic lapse provisions do not appear to be an attempt by the General Assembly to define the entire universe of events that may cause an officer to lose his or her certification. The focus, rather, is on fashioning a mechanism by which to enforce the training requirements established by the Commission. Inclusion of a provision that termination of employment invalidates officer certification does not further this goal. Hence, we do not consider the absence of termination of employment among the express provisions of § 4–201 necessarily indicative of a legislative intent that certification remain intact following termination.

■ Furthermore, certain other subsections of § 4–201 support the conclusion that the General Assembly does not intend that an officer's certificate remain valid after termination of employment. In its judgment below, the Court of Special Appeals noted that the statutory definition of "police officer" is a significant indicator that a certificate is invalidated if an officer is terminated. A "police officer" is defined as "a person who has the authority to enforce the general criminal laws of this State *and* is a member of any of [twelve enumerated] law enforcement units." § 4–201(a)(8)(i)(emphasis added). An individual who is no longer "a member of . . . a law. enforcement unit" clearly does not fall within this definition. We agree with the intermediate appellate court, therefore, that an individual cannot be certified as fulfilling the Commission's standards "as a police officer" if he or she fails to meet the very definition of police officer.

The conclusion that employment with a law enforcement unit is a prerequisite to certification is also consistent with § 4–201(j), which provides: "A person may not be employed as a police officer by any law enforcement unit *for a period to exceed 12 months* unless that person is certified by the Commission...." (Emphasis added). This 12–month–grace period affords officers sufficient time, after they are hired by a particular law enforcement unit, to comply with the Commission's standards for certification. The inclusion of the grace period suggests that the legislature presumed that an individual is not eligible for certification unless and until he or she is employed as a police officer, and that a period during which to obtain that certification should be provided.[4] Section 4–201(e) supports this conclusion; it restricts a probationary appointment as a police officer to "a total period not exceeding one (1) year for the purpose of enabling such a person ... to take a training course as prescribed in this section."

Stanford attempts to draw a distinction, however, between the requirements for *becoming* certified and the requirements for *remaining* certified. To become certified, Stanford concedes that one must be employed by a law enforcement agency. Once certified, however, Stanford argues that continued employment is not necessary to remain certified. There is no indication in the relevant statutory provisions that the General Assembly intended such a distinction. Furthermore, "in seeking to ascertain legislative intent, [we] may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986). The adoption of Stanford's

---

4. Commission regulations, in fact, clarify that an individual who receives a probationary appointment as a police officer as defined in § 4–201 begins a one-year probationary period, during which time "[t]he officer shall successfully complete the entrance-level police training program, approved by the Commission." COMAR 12.04.01.01A(1)(b). If the individual is terminated from employment, the probationary certificate issued during the probationary period is invalidated. COMAR 12.04.01.11B(2)(c).

interpretation would have an undesirable result: an individual who possesses the rights and privileges attendant to certification as a police officer, but who is not operating under the auspices of any particular law enforcement unit.

Counsel for Stanford opined at oral argument that, assuming that an individual remains certified after termination of employment with a law enforcement agency, that individual would retain the privilege, by virtue of his or her certification as a police officer, to carry a handgun. It is unclear whether this position is supported by the applicable law,[5] and we express no opinion on the matter today. This question exemplifies, however, precisely the type of confusion that would arise if we were to adopt an interpretation that would permit certification to continue even after termination of employment as a law enforcement officer. While it seems contrary to sound public policy to permit an unemployed police officer to enforce the law in a vigilante-like manner, an individual who is "certified as a police officer" certainly appears, at least superficially, to possess the authority to act as a police officer. By construing the statute to mean that certification is automatically revoked upon termination of employment with a law enforcement unit, we avoid the uncertainties that would result from an interpretation to the contrary.

### 3.

Finally, the regulations that have been promulgated by the Commission in accordance with its rule making authority leave little doubt that an officer does not remain certified after termination of employment. Commission regulations require officers to carry their certificates "at all times while ... in a duty status." Code of Maryland Regulations (COMAR) 12.04.01.11G(3). If an officer is terminated, however, the

---

5. Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 36B, which establishes a general prohibition against the carrying, wearing or transporting of an open or concealed handgun, provides in pertinent part: "Nothing in this section shall prevent the wearing, carrying, or transporting of a handgun by: (i) law-enforcement personnel of the United States, or of this State, or of any county or city of this State...."

certificate must "be returned to the Commission within 10 working days by the agency head...." COMAR 12.04.01.11E. The meaning of this regulation seems beyond dispute: an officer who is terminated must forfeit his or her certification.

Stanford contends, however, that this regulation is merely a "housekeeping" provision, and that the return of a certificate to the Commission upon termination of employment does not mean that the officer is no longer certified. If we were to accept this argument, several other regulatory provisions would be rendered meaningless.

COMAR 12.04.01.11F, for example, seems specifically aimed at remedying the *ipso facto* decertification of police officers who have terminated their employment with one law enforcement agency, and who are subsequently hired by another law enforcement agency. It provides:

"A person will be recertified as a police officer and a certificate shall be issued to the officer when:

(1) A person is hired by a second or successive law-enforcement unit, the "Notice of Probationary Appointment" form has been received by the Commission, and the person has met all standards of the Commission."

With regard to officers "who ha[ve] been separated from a law enforcement unit in good standing for not more than 3 years," COMAR 12.04.01.11D(1) provides that "[i]f all training requirements for the previous calendar year have been met, an individual may be certified without additional training."[6] The Commission has thus established a minimally burdensome process of recertification for previously-certified officers, who are re-hired by a subsequent law enforcement agency within 3 years and who have completed the requisite training. If it

---

6. For those officers "who ha[ve] been separated from a law enforcement position in good standing for more than 3 years but not more than 5 years," the requirements for recertification are more stringent: these officers must complete certain portions of the entrance level training program. *See* COMAR 12.04.01.11D(2). And if the period of separation is in excess of 5 years, the individual must satisfy "all entrance-level standards of the Commission." COMAR 12.04.01.11D(3)(a).

were true that officers remained certified following termination of employment, there would be no need for this expedited process of recertification.

Stanford also claims that officers who transfer, without a gap in service, from one agency to another presently are "not required to undergo an entire recertification procedure, or any particular [Commission] procedure, for that matter." Because the judgment of the Court of Special Appeals makes no distinction between officers who transfer without a gap in service and officers who are re-hired after a period of non-employment, Stanford interprets the decision as meaning that both categories of officers lose their certification upon separation from the initial law enforcement agency. Accordingly, Stanford contends that the Commission must now mandate new procedures for transferring officers.

Stanford cites no statutory or regulatory authority, however, in support of his contention that officers who transfer, without a gap in service, are not required to be recertified. In fact, the regulations make no express distinction between such officers and officers who, like Stanford, are re-hired after a period of non-employment. While we need not decide the matter in order to resolve the issue in this case, we note that the aforementioned recertification regulations seem to apply regardless of the circumstances under which the officer is reappointed.

With regard to other "procedures" required by the Commission, the pertinent regulations are similarly devoid of any indication that they do not apply to transferring officers. As the Commission notes in its Brief, the "regulations set forth a number of steps that a law enforcement unit must follow whenever it seeks to hire an individual as a police officer, regardless of whether that person is currently employed elsewhere as a police officer or is not employed at all...." For example, COMAR 12.04.01.02B requires the filing of a Notice of Probationary Appointment "within 30 days of the officer's date of employment *each and every time* the officer is hired by a law enforcement unit in the State." COMAR

12.04.01.02B (emphasis added); *see also* COMAR 12.04.01.02A. Another regulation specifically requires a background investigation "[i]n each subsequent appointment" as a police officer. *See* COMAR 12.04.01.01B. There are no exceptions in these regulations for officers who transfer without a gap in service. Contrary to Stanford's assertion, therefore, there appear to be procedures in place that are triggered by the appointment or reappointment of an individual as a police officer, regardless of the officer's previous employment status.

The various aforementioned regulations indicate that the Commission considers an officer who is terminated from employment to be automatically decertified. We have repeatedly stated that "the contemporaneous interpretation of a statute by the agency charged with its administration is entitled to great deference." *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307, 1315 (1986); *see also McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989); *Board v. Harker,* 316 Md. 683, 698–99, 561 A.2d 219, 227 (1989); *Consumer Protection v. Consumer Pub.,* 304 Md. 731, 759, 501 A.2d 48, 63 (1985). This is particularly true where the "interpretation has been applied consistently and for a long period of time," *Balto. Gas,* 305 Md. at 161, 501 A.2d at 1315, or "where there are subsequent re-enactments without change of the language thus construed." *Kimball–Tyler v. City of Balto.,* 214 Md. 86, 99, 133 A.2d 433, 440 (1957).

In the years since the promulgation of these regulations, the General Assembly has enacted several amendments to § 4–201.[7] None of the subsequent enactments contradicts the regulatory provisions or otherwise indicates legislative disapproval of the view that termination of employment invalidates

---

7. For example, the regulation that requires agencies to turn over the certificates of terminated officers has been in effect since December 31, 1985. *See* 12:16 Md. Reg. 1608; COMAR 12.04.01.11(E). The effective date of the regulation pertaining to recertification upon re-employment was January 1, 1982. *See* 8:25 Md. Reg.1996; COMAR 12.04.01.11(F). With one exception, the General Assembly has amended § 4–201 every year from 1986—1996; there were no amendments in 1989.

a previously-issued certificate. Legislative acquiescence in the Commission's treatment of the effect of termination of employment is yet further confirmation that the General Assembly intends the same result.

## III.

In sum, an examination of the language of the statute, the purposes behind its enactment, and the applicable regulations leads us to conclude that termination of employment invalidates an individual's certification as a police officer. Upon Stanford's termination from the Easton Police Department, therefore, his certification was automatically "revoked," and the action taken at the Commission meeting of June 7 is properly characterized as a determination that Stanford should not be recertified.

Stanford stated in his Brief: "It is not disputed, if indeed Stanford's certificate had been [automatically] revoked, that the [Commission] could refuse to certify him." The propriety of the Commission's refusal to recertify Stanford, therefore, is not before this Court. We note, however, the refusal to recertify Stanford apparently did not result from his failure to complete the requisite training programs but, rather, from his conviction for misdemeanor theft, a minor offense punishable by a fine of not more than $1,000 or imprisonment for not more than 1 year. The record indicates that Stanford has now made full restitution to the FHA. Nothing in this opinion should be construed as making him ineligible for recertification.

Finally, because the June 7 meeting did not amount to a revocation hearing, it is unnecessary for us to address Stanford's argument that he was not provided the process that he was due. The judgment of the Court of Special Appeals is affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*