720 A.2d 311

**STATE of Maryland**

**v.**

**Wilbur BELL.**

**No. 3, Sept. Term, 1998.**

Court of Appeals of Maryland.

Nov. 17, 1998.

710

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Petitioner.

Daniel H. Weiss, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

Wilbur Bell, respondent, was convicted in a court trial before the Circuit Court for Prince George's County of second degree rape, assault and battery, attempted rape, and assault with intent to rape. He was sentenced to twenty years

imprisonment on the rape conviction, with ten years suspended. The trial court merged the remaining counts for sentencing purposes. Respondent appealed his convictions to the Court of Special Appeals.

As relevant to this opinion, that court vacated his convictions and remanded the case to the circuit court, holding that respondent had been insufficiently advised of his right to a jury trial because the trial court failed to advise him specifically of the unanimity requirement that all twelve jurors must agree in order to render a verdict of guilt.[1]

The State petitioned this Court, presenting one issue for our consideration:

Did the Court of Special Appeals incorrectly hold that Maryland Rule 4–246(b) requires an examination of a defendant on the record and in open court regarding jury unanimity as a prerequisite for a knowing and voluntary waiver of a jury trial?

We granted a writ of certiorari to answer this important question. We shall reverse the Court of Special Appeals and direct it to affirm the trial court's judgment.

## RELEVANT PROCEDURAL FACTS

On September 2, 1994, respondent was arrested pursuant to a warrant for the above-charged offenses. The record indicates that on November 14, 1994, he filed a demand for a jury trial. When the case ultimately was called for trial, the following exchange occurred:

The Court: Should we bring a jury in?

Mr. Hale [Defense Counsel]: No, Your Honor. We are going to waive a jury trial and go with a Court trial.

The Court: Okay. Have you advised Mr. Bell of the ramifications of that?

---

1. The Court of Special Appeals, although vacating the trial court's judgment for this reason, nonetheless addressed all issues presented to that court by Mr. Bell, finding no merit in Mr. Bell's other claims of error. No cross-petition was filed.

Mr. Hale: We have talked it over, Your Honor. We talked it over the last time we were here, and I haven't talked it over yet this morning with him.

The Court: Why don't you do that on the record[?]

Mr. Hale: Mr. Bell, stand up for a second, if you would. Mr. Bell, how old are you?

The Defendant: I'm thirty-four.

Mr. Hale: You can read and write the English language, right?

The Defendant: Yes.

Mr. Hale: You know what you are charged with, second degree rape, a very serious charge that can get you thirty years in jail?

The Defendant: Yes, sir.

Mr. Hale: You and I talked about whether you should have a jury trial or judge trial, haven't we?

The Defendant: Yes, sir.

Mr. Hale: And we came to the conclusion that we would like Judge Hotten to decide the case rather than a jury?

The Defendant: Yes, sir.

Mr. Hale: Have I forced you to do that?

The Defendant: No, sir.

Mr. Hale: Are you giving up your right to a jury trial freely and voluntarily?

The Defendant: Yes, sir.

Mr. Hale: Has anyone promised you anything?

The Defendant: No, sir.

Mr. Hale: Or offered you any inducement?

The Defendant: No, sir.

Mr. Hale: Are you in good health mentally and physically?

The Defendant: No.

The Court: Have you taken any alcohol, medication or drugs?

The Defendant: No, ma'am.

The Court: Do you understand if you were to have a jury trial, which would consist of twelve people, or whether you choose to have this member of the bench hear the case, the State would still have the burden to prove the charges against you beyond a reasonable doubt?

The Defendant: Yes, sir [sic].

The Court: Have you been satisfied with the services of your attorney up to the present time?

The Defendant: Yes, ma'am.

The Court: Is there anything that's been said or anything that's been going on so far that you don't understand or have a question about?

The Defendant: No, ma'am.

The Court: At this time, knowing that you give up the right to a jury trial and that you are under the influence of no alcohol, medication or drugs, and that you are making this decision freely and voluntarily, is it your intention to give up or waive your right to a jury trial?

The Defendant: Yes.

The Court: Okay.

## DISCUSSION

We said in *Countess v. State*, 286 Md. 444, 455, 408 A.2d 1302, 1307–08 (1979):

> The requirement of § d [of then Rule 735] that the defendant must "knowingly and voluntarily" waive the right to a jury trial goes no further than the mandates for a waiver of that right under the constitutions. If the waiver is determined by the court to have been an intentional relinquishment or abandonment of a known right, it meets the test of Rule 735d. For the court to ascertain whether it was a "known right" which was waived, § d prescribes that the defendant have "full knowledge of his right to a jury trial." The defendant-petitioners urge that "[t]he term 'full knowledge' certainly implies understanding of the most

salient features of trial by jury, including, at a minimum, the composition of the jury, the jury selection process, and the unanimity requirement." This goes far beyond what is necessary for a waiver of a jury trial to be constitutionally effective; the Supreme Court has certainly not enunciated such a test. We do not believe that Rule 735 calls for knowledge of all the matters which the defendant-petitioners suggest are essential to a valid election of a court trial. Such detailed information regarding a jury is not indicated. What the Rule contemplates is that the defendant have a basic understanding of the nature of a jury trial. We think that this understanding is generally satisfied when the defendant entitled to a jury trial knows that he has the right to be tried by a jury of 12 persons or by the court without a jury; that whether trial is by a jury or by the court, his guilt must be found to be beyond a reasonable doubt; that in a jury trial all 12 jurors must agree that he is so guilty but in a court trial the judge may so find. These are the matters which the defendant acknowledges he is aware of in the written form of election set out in § b of the Rule in designating his election of court trial or jury trial, and normally they should suffice. We saw no need to go further when we adopted the Rule, and we see no need to add other matters now. Ordinarily if the court duly determines that the defendant understands those aspects of a jury trial, he has, under the Rule, *"full knowledge of his right to a jury trial."* [Emphasis added.]

The rule in effect at the time of our decision in *Countess*, Maryland Rule 735(d), provided:

If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial *with full knowledge of his right to a jury trial and that he has knowingly and voluntarily waived the right.* If the court determines otherwise, it shall give the

defendant another election pursuant to this Rule. [Emphasis added.]

Additionally, subsection (b) of that rule provided a form criminal defendants were required to sign to elect a court or jury trial. That form specified, *inter alia*, that the defendant knew he had "a right to be tried by a jury of 12 persons or by the court without a jury," and that in a jury trial, "all 12 jurors must find that [the defendant is] guilty beyond a reasonable doubt." Relative to this waiver procedure, we noted in *Countess*, 286 Md. at 453, 408 A.2d at 1307, that "[t]here are three aspects to this procedure: (1) the election; (2) the inquiry; and (3) the knowledge necessary for an effective waiver of a trial by jury."

After our decision in *Countess*, this Court revised Rule 735 on November 13, 1981 (effective January 1, 1982), deleting the "full knowledge" requirement. Additionally, revised Rule 735 no longer required a written waiver or fixed litany of advice. 8 Md. Reg.1928, 1929–30 (1981); *see also State v. Hall*, 321 Md. 178, 182, 582 A.2d 507, 509 (1990); *Martinez v. State*, 309 Md. 124, 132 n. 7, 134, 522 A.2d 950, 954 n. 7, 955 (1987) ("In determining whether the defendant has knowingly and voluntarily waived his right to a jury trial, the questioner need not recite any fixed incantation."). The rule, as modified to its present form as Maryland Rule 4–246, provides in subsection (b):

(b) *Procedure for acceptance of waiver.* A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until it determines, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the waiver *is made knowingly and voluntarily.* [Emphasis added.]

As is evident from the emphasized portions of the respective rules, the requirement of "full knowledge" contained in the former Rule 735, as it existed at the time of *Countess*, has been deleted and a trial court now may accept a waiver if it is

satisfied that the waiver is made "knowingly and voluntarily." [2] The current rule no longer requires the trial court to establish that a defendant has "full knowledge" of the right to a jury trial. We therefore must address what different standard, if any, was created when the rule was modified to delete the "full knowledge" requirement in effect at the time of *Countess.*

We have not addressed, since the rule was modified in 1981, whether a defendant can "knowingly" waive his or her right to a jury trial without a specific reference to the unanimity requirement during the in-court advice given to a defendant about whether to elect a court or jury trial.[3] We begin our analysis with the canons of statutory construction that are also generally applicable in respect to rule construction. *See State v. Harrell,* 348 Md. 69, 79, 702 A.2d 723, 728 (1997) ("In construing a rule, we apply principles of interpretation similar to those used to construe a statute."); *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994) ("We have repeatedly stated that the canons and principles we follow in construing statutes apply equally to an interpretation of our rules.").

We have said that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Legislative intent must be sought first in the actual language of the statute. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater v. Mayor of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks,* 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400

---

2. Both the former and the present rule require that a waiver be made knowingly and voluntarily.

3. This Court has addressed the requirement of voluntariness before waiving the jury trial right. *See Stewart v. State,* 319 Md. 81, 570 A.2d 1229 (1990); *Martinez,* 309 Md. at 131–36, 522 A.2d at 953–56.

A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss,* 217 Md. 133, 136, 141 A.2d 734, 736 (1958). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts normally do not look beyond the words of the statute to determine legislative intent. *Marriott Employees,* 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County,* 248 Md. 403, 414, 237 A.2d 35, 41 (1968).

In *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992), however, this Court opined in reference to construing an alimony statute:

While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. [Citations omitted.]

This Court recently stated that "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence.'" *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in original) (quoting *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989)). To this end,

[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed.... We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

... [I]n *State v. One 1983 Chevrolet Van,* 309 Md. 327, 524 A.2d 51 (1987), ... [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning— what Judge Orth, writing for the Court, described as "the legislative scheme." [*Id.* at] 344–45, 524 A.2d at 59. We identified that scheme or purpose after an extensive review of the context of Ch. 549, Acts of 1984, which had effected major changes in Art. 27, § 297. That context included, among other things, a bill request form, prior legislation, a legislative committee report, a bill title, related statutes and amendments to the bill. *See also Ogrinz v. James,* 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee report) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning.

*Kaczorowski,* 309 Md. at 514–15, 525 A.2d at 632–33 (some citations omitted).

In analyzing the plain meaning of the language used in the rule, we note first that THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 573 (unabr. ed.1983), defines "full" as "2. complete; entire; maximum ... 3. of the maximum ... extent, volume." As relevant to the case at bar, it defines "knowledge" as "1. acquaintance with facts, truths, or principles ... 3. acquaintance or familiarity gained by sight, experience, or report ... 5. awareness, as of a fact or circumstance ." *Id.* at 793. As relevant to our inquiry, that dictionary defines "knowingly" [4] as "1. shrewd, sharp, or astute ... 3. that knows; having knowledge or information; intelligent; wise. 4. conscious; intentional; deliberate." *Id.* BLACK'S LAW DICTIONARY 672 (6th ed.1990) defines "full" as "[a]bundantly provided, sufficient in quantity or degree, complete, entire, and detailed. . . . Ample, perfect ... not wanting in any essential quality." It defines "knowledge" as "[a]cquaintance with fact or truth." *Id.* at 872. Finally,

---

**4.** No separate listing for "knowingly" exists in this source. It is included, however, in the definition of "knowing." *Id.*

"knowingly" is defined as "[w]ith knowledge; consciously; intelligently; willfully; intentionally." *Id.*

Under the former rule construed by *Countess*, the trial court was required to determine whether a criminal defendant waived his right to a jury trial "with full knowledge" of that right. Given the dictionary and ordinary meanings of "full" and "knowledge," a defendant was required to be apprized completely of the jury's function at trial and his right to be tried by a jury. We said in *Countess* that this meant that a defendant should have a "basic understanding of the nature of a jury trial." *Countess*, 286 Md. at 455, 408 A.2d at 1308. It generally was believed that the record had to reflect that all aspects of the right to a jury trial were explained to a defendant. *See Countess*, 286 Md. at 455, 408 A.2d at 1308 (listing aspects of jury trial the trial court and written waiver must explain for defendant to have "full knowledge" of his jury trial right). That "full knowledge" requirement, however, is no longer expressly imposed by the current rule. *See* Md. Rule 4–246.

It can be argued, therefore, as the State does now, that because full knowledge no longer is necessary, so long as a defendant knows he is giving up his right to be tried by a jury, possesses a general knowledge of the nature of a jury trial and waives that right voluntarily, the dictates of the current rule are met. The plain meaning of the present rule supports this contention. Rule 4–246(b) now provides that a waiver of the jury trial right must be made "knowingly." This word, as relevant here, means "having knowledge or information." It would seem, accordingly, that the alterations in the language of the rule from *Countess* to present day would indicate this Court's intent to replace the more stringent "full knowledge" requirement with a more flexible "knowingly" made waiver requirement. The history behind the present rule bears this out. We shall turn shortly to the legislative history of Rule 4–246 after we briefly discuss the relevance of amendments in the legislative and rule-making process in terms of that history.

■ One form of legislative history useful in determining legislative intent is amendments proposed but later rejected by the Legislature or, as in this case, rules of procedure proposed by the Standing Committee on Rules of Practice and Procedure (Rules Committee) later rejected by the Court of Appeals.

> Although we have never held that the amendment-rejection theory is a completely determinative method of ascertaining legislative intent, we have indicated that such action strengthens the conclusion that the Legislature did not intend to achieve the results that the amendment would have achieved, if adopted. In *Bosley v. Dorsey,* 191 Md. 229, 240, 60 A.2d 691 (1948), for example, we indicated that the rejection by the Senate of a bill that would have authorized the People's Counsel to appeal decisions of the Public Service Commission "... strengthens the conclusion that the Legislature has not intended that the [P]eople's Counsel shall appeal from orders of the Commission."

*Demory Bros. v. Board of Pub. Works,* 273 Md. 320, 326, 329 A.2d 674, 677 (1974). *See also NCR Corp. v. Comptroller,* 313 Md. 118, 125, 544 A.2d 764, 767 (1988) ("While a committee's rejection of an amendment is clearly not an infallible indication of legislative intent, it may help our understanding of overall legislative history."); *Prince George's County v. Commission on Human Relations,* 40 Md.App. 473, 489, 392 A.2d 105, 115 (1978) ("We may, as we have herein done, consider rejection by the General Assembly of S.B. 1241, H.B.1982, and H.B. 1012 as an indication of the legislative will."), *vacated on other grounds,* 285 Md. 205, 401 A.2d 661 (1979). *But see Automobile Trade Ass'n v. Insurance Comm'r,* 292 Md. 15, 24, 437 A.2d 199, 203 (1981) (noting that rejection of a bill is a "rather weak reed upon which to lean in ascertaining legislative intent.").

This aid in evaluating legislative intent has been used frequently to interpret criminal statutes. For instance, in *Armstead v. State,* 342 Md. 38, 77–83, 673 A.2d 221, 240–43 (1996), we held that population genetics statistics were admissible when submitted with DNA evidence because the Legisla-

ture had intended that result even though the statute was silent on the matter. We reasoned that, by deleting the words "unique" and "uniquely" from the proposed Bill to enact the DNA admissibility statute, the Legislature was aware of "some possibility of random matching," which could be explained by population genetics statistics. *Id.* at 78, 673 A.2d at 240.

In *Harris v. State,* 331 Md. 137, 150–54, 626 A.2d 946, 952–54 (1993), we interpreted the legislative intent behind the weapons provision contained in the Drug Kingpin Act. The Act, as originally drafted, would have criminalized the "use or possession" of a firearm during or in relation to a drug trafficking offense. The Conference Committee for the proposed senate bill, however, deleted the word "possesses" and replaced it with "wears, carries, or transports." We stated that "[b]y deleting 'possesses,' and replacing it with 'wears, carries, or transports,' terms . . . more active than 'possesses', the Legislature clearly expressed an intention to require, for conviction, something more than the mere possession of a handgun during and in relation to a drug trafficking crime." *Id.* at 152, 626 A.2d at 953. Likewise, *Krauss v. State,* 322 Md. 376, 386, 587 A.2d 1102, 1106 (1991), held that a defendant's refusal to take a Breathalyzer test could not be admitted in court as evidence of guilt. In analyzing the statute specifying when a refusal to take a Breathalyzer test could be admitted, we first noted that the language of the statute prior to a 1986 amendment provided that refusing to submit to the test created no presumption of guilt or innocence and that a refusal to submit was "*not* admissible in evidence at the trial." *Id.* (quoting Md.Code (1974, 1989 Repl.Vol.), § 10–309(a) of the Courts & Judicial Proceedings Article). The Legislature amended the section by removing the word "not." Research of the legislative history on the amended statute revealed the Legislature originally intended to omit the "no inference or presumption" portion of the statute, leaving only the "is admissible in evidence" clause. The purpose of the proposed amendment was to provide an additional penalty for refusal to submit to a Breathalyzer test.

The Legislature's failure to adopt the amendment as originally intended, we said, was significant because it demonstrated the Legislature's recognition that refusal to submit to the test was not material or relevant to guilt or innocence, but could be material in other circumstances. *Id.* at 386–87, 587 A.2d at 1107. Therefore, by declining to adopt the proposed language of the amending bill, the Legislature clearly did not intend for refusals to submit to be admissible toward guilt. *See also Gray v. State Rds. Comm'n,* 253 Md. 421, 429–30, 252 A.2d 810, 815 (1969) ("[T]he implication is well justified, that prior to the passage of Chapter 447, the Legislature, by deleting from the Act as originally introduced, a deduction item based on a Workmen's Compensation award, specifically intended the Unsatisfied Claim and Judgment Fund to be open to invasion by subrogation . . . ."); *cf. also Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 462, 456 A.2d 894, 904 (1983) (noting that Legislature's repeated rejection of bills adopting comparative negligence evidences intent to retain contributory negligence).

Turning now to the history behind the modification of Rule 735, we note that the Rules Committee originally proposed to the Court of Appeals an entire redraft of Rule 735 as it existed at the time. Seventy–Fifth Report of the Standing Committee on Rules of Practice and Procedure, 2–3 & app. (Oct. 26, 1981). In subsection (b) of that redraft, the Rules Committee proposed the following language:

> The court may not accept the waiver until it determines, after an examination of the defendant . . . that *the defendant voluntarily* waived a jury trial, understanding that
>
> 1. The defendant has the right to be tried by a jury of 12 persons or by the judge without a jury; and
>
> 2. Before a finding of guilty in a jury trial, *all 12 jurors must agree that the defendant is guilty.*

*Id.* at app. (emphasis added). In subsection (c), the committee proposed a certification form the trial judge would have been required to sign for every waiver of a jury trial, which

reiterated the information listed in subsection (b). *Id.* at 3 & app.

This Court rejected both proposals. Rules Order, 8 Md. Reg.1928–30 (1981); Minutes of Meeting of Court of Appeals, 3 (Nov. 6, 1981) [hereinafter Minutes]. Instead, we inserted the words "knowingly and" immediately before "voluntarily." Rules Order, 8 Md. Reg. at 1930. We then deleted the remainder of the proposal enumerating specifically what the defendant was required to know prior to a waiver,including the deletion of the provision that the trial court specifically had to find that a defendant waived his right "understanding that . . . all 12 jurors must agree that the defendant is guilty." *Id.*[5] This Court's rejection of the Committee's proposal for the specific language in Rule 735 describing the need for twelve unanimous jurors and the certification form, which would have explained that right in detail to the defendant, implies that we wished to move away from the rigidity of the former rule 735 and *Countess. See State v. Marsh,* 337 Md. 528, 535, 654 A.2d 1318, 1321–22 (1995) (noting purpose of changes to Rule 735 was "to make the Rule more flexible by eliminating the prescribed litany"). In other words, this Court required that the judge be certain only that the defendant had "knowingly" as well as "voluntarily" waived his jury rights and nothing more.

A review of relevant case law also supports this conclusion. In *Hall,* 321 Md. at 182–83, 582 A.2d at 509, we stated:

Our cases hold that whether there has been an intelligent waiver of the jury trial right depends upon the facts and circumstances of each case. *Stewart, supra,* 319 Md. at 90, 570 A.2d at 1234; *Martinez, supra,* 309 Md. at 134, 522 A.2d [at 955]; *Dortch v. State,* 290 Md. 229, [235,] 428 A.2d 1220[, 1223] (1981). In determining whether the defendant has knowingly and voluntarily waived his right to a jury trial under Rule 4–246(b), "the questioner need not recite any

---

5. The certification requirement in proposed subsection (c) was defeated 7–0. The motion to remove the "unanimity" language from subsection (b) and replace the word "knowingly" was approved 5–2. Minutes at 3.

fixed incantation." *Martinez, supra,* 390 [309] Md. at 134, 522 A.2d [at 955]. The court must, however, satisfy itself that the waiver is not a product of duress or coercion and further that the *defendant has some knowledge* of the jury trial right before being allowed to waive it. *Id.* at 134, 522 A.2d [at 955]. [Emphasis added.]

There, we refused to overturn the defendant's conviction even though the trial court failed to advise him of certain details about his jury trial right:

> While the court did not specifically ask Hall whether he understood what he had been told, or whether his election of a court trial was the result of any physical or mental duress or coercion, we think that the record before us demonstrates that the court could fairly be satisfied that Hall had the requisite knowledge of the jury trial right, that the waiver was voluntary, and that the requirements of the rule were satisfied. Moreover, the court was not required to advise Hall, as he contends, as to the details of the jury selection process.

321 Md. at 183, 582 A.2d at 510.

This Court used the same "depends upon the facts and circumstances" approach to hold the waiver deficient in *Tibbs v. State,* 323 Md. 28, 590 A.2d 550 (1991):

> Considering the totality of the circumstances in the present case, *see Dortch v. State,* 290 Md. 229, 235, 428 A.2d 1220[, 1223] (1981), we hold that the record is woefully deficient to establish that Tibbs knowingly and voluntarily relinquished his right to a jury trial. The record fails to disclose that Tibbs received *any information at all concerning the nature of a jury trial,* as required by our cases. *See Hall, supra,* 321 Md. at 183, 582 A.2d [at 509]; *Martinez v. State,* 309 Md. 124, 522 A.2d 950 (1987). It is not sufficient that an accused merely respond affirmatively to a naked inquiry, either from his lawyer or the court, that he understood that he has a right to a jury trial, that he knows "what

a jury trial is," and waives that right "freely and voluntarily."

*Id.* at 31–32, 590 A.2d at 551 (emphasis added).

As relevant to the issue presented in the case *sub judice,* the waiver exchange that occurred in *Tibbs* was as follows:

MR. STILLRICH [Defense Counsel]: And do you understand what a jury trial is?

DEFENDANT: Yes, I do.

MR. STILLRICH: And you indicated to me when I spoke with you at the detention center the other evening that you desired to have the case tried before this Court alone, is that correct?

DEFENDANT: Yes, I do.

MR. STILLRICH: And you do specifically waive your right to have the matter tried before a jury?

DEFENDANT: Yes, I do.

MR. STILLRICH: Has anyone forced you or threatened you to have you give up your right to a jury trial?

DEFENDANT: No, they haven't.

MR. STILLRICH: Have you given up your right to a jury trial freely and voluntarily?

DEFENDANT: Yes, I have.

. . . .

MR. STILLRICH: Your Honor, I would proffer to the Court that a waiver of a jury trial is freely and voluntarily tendered.

. . . .

THE COURT: All right.

*Id.* at 30, 590 A.2d at 551 (alteration in original).

In contrast to the case *sub judice,* the defendant in *Tibbs* was given *no* explanation of the nature of a jury trial. The advice given was limited to questions relating to voluntariness, *i.e.,* that Tibbs was not coerced or placed under duress in waiving his jury trial right. The record in the present case reflects a more extensive litany, notwithstanding that no spe-

cific advisement of the unanimity requirement was given. The trial judge explained to respondent the other fundamentals of a jury trial: that a jury "would consist of twelve people" and that, under either choice, the trier of fact would have to find him guilty beyond a reasonable doubt. Respondent and his trial counsel also had discussed the right to a jury trial prior to the hearing. *Cf. State v. Kenney,* 327 Md. 354, 364, 609 A.2d 337, 342 (1992) (holding defense counsel's on-record waiver on client's behalf of right to twelve-person jury after off-record discussion with him was valid). We may presume that respondent's counsel fully informed him of his rights during their pre-trial discussion. *Id.* at 362, 609 A.2d at 341 (citing *Fowler v. State,* 237 Md. 508, 515, 206 A.2d 802, 806 (1965); *Stevens v. State,* 232 Md. 33, 39, 192 A.2d 73, 77, *cert. denied,* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963)). *See also Ayala v. State,* 226 Md. 488, 493, 174 A.2d 160, 163 (1961) (noting presumption that "an attorney will conduct himself as the law and his duty require him to do." (citing *Woodell v. State,* 223 Md. 89, 95, 162 A.2d 468, 472 (1960))).

The trial court completed the waiver inquiry by asking whether respondent had any questions or did not understand anything that had transpired, to which he replied: "No, ma'am." The record, therefore, reflects that, under the "totality of the circumstances," the defendant had "some knowledge" of his jury trial rights, at least enough to satisfy the trial court that respondent knowingly waived his jury trial right. *See Tibbs,* 323 Md. at 31, 590 A.2d at 551; *Hall,* 321 Md. at 182–83, 582 A.2d at 509; *Martinez,* 309 Md. at 134, 522 A.2d at 955.

A review of this issue in other jurisdictions reveals a variety of approaches. Some states agree that defendants can "knowingly and voluntarily" waive their jury trial right without being informed specifically that a jury's verdict must be unanimous. *See People v. Fields,* 65 Cal.App.4th 698, 699, 76 Cal. Rptr.2d 700, 702 (1998) ("In accepting the waiver of the right to a jury trial, the trial court does not have a duty to sua sponte tell a defendant who is represented by competent counsel . . . that a jury trial requires [an] unanimous verdict.")

(citing *People v. Tijerina*, 1 Cal.3d 41, 45–46, 81 Cal.Rptr. 264, 459 P.2d 680, 682 (1969)); *Tucker v. State*, 547 So.2d 270, 271 (Fla.Dist.Ct.App.1989) (holding Florida Rules of Criminal Procedure do not require a defendant to be informed that jury verdict must be unanimous before waiver of jury trial); *People v. James*, 192 Mich.App. 568, 571, 481 N.W.2d 715, 717 (1992) (holding waiver valid because Michigan law does not require that a defendant be informed of unanimity requirement); *People v. Dennis*, 210 A.D.2d 803, 804–05, 620 N.Y.S.2d 614, 616 (1994) (upholding waiver made knowingly and voluntarily even though trial court did not inform defendant of unanimity requirement). *See also United States ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1088 (7th Cir.1989) (holding that states are not constitutionally required to follow litany guidelines recommended by federal courts for a knowing and voluntary waiver).

A number of jurisdictions, including several federal circuits, recommend that defendants be informed of the aspects of a jury trial, including unanimity, before "knowingly and voluntarily" waiving their right to a jury, but do not so require. In *State v. Redden*, 199 W.Va. 660, 667, 487 S.E.2d 318, 325–26 (1997), for example, the Supreme Court of Appeals of West Virginia declined "to set forth a specific formulation of the degree or kind of knowledge about the nature of the right to a jury trial," but implored the lower courts to inform defendants about unanimity anyway. That court backed away from its request in *State ex rel. Ring v. Boober*, 200 W.Va. 66, 73, 488 S.E.2d 66, 68, 73 (1997), when it affirmed a standard written jury trial waiver form that did not mention unanimity. The court reiterated that *Redden* "specifically declined to adopt a specific list of things that a defendant must know before waiving his right to a jury trial." *Id. See also United States v. Duarte–Higareda*, 113 F.3d 1000, 1002–03 (9th Cir.1997) (declining to impose "a colloquy in every case" but suggesting court "should inform the defendant that … a jury verdict must be unanimous."); *United States v. Robertson*, 45 F.3d 1423, 1432 (10th Cir.1995) (joining sister circuit courts that recommend but do not mandate waiver guidelines); *Marone v.*

*United States,* 10 F.3d 65, 67 (2d Cir.1993) (suggesting that defendant be informed of "fundamental attributes" of jury trial, but Constitution does not require litany); *United States v. Cochran,* 770 F.2d 850, 852–53 (9th Cir.1985) (holding that trial courts should, but need not, conduct colloquy which describes unanimity); *United States v. Martin,* 704 F.2d 267, 273 (6th Cir.1983) (noting defendant would be "sufficiently informed" if unanimity requirement were made known, but "technical knowledge" not required); *United States v. Anderson,* 704 F.2d 117, 119 (3d Cir.) (declining to create supervisory rule mandating pre-waiver colloquy), *cert. denied,* 464 U.S. 838, 104 S.Ct. 129, 78 L.Ed.2d 125 (1983); *Ciummei v. Commonwealth,* 378 Mass. 504, 509–10, 392 N.E.2d 1186, 1189 (1979) ("We do not intend to create a rigid pattern but note that . . . the judge might state that the . . . verdict of the jury must be unanimous. . . ."); *State v. Ross,* 472 N.W.2d 651, 654 (Minn.1991) (recommending that defendants be informed of all aspects of jury trial but affirming conviction of defendant not informed of necessity of unanimous verdict); *State v. Ellis,* 953 S.W.2d 216, 222 (Tenn.Crim.App.1997) (enunciating colloquy that would sufficiently inform defendant, including unanimity, but noting that procedural rule does not mandate it).

Finally, some jurisdictions require trial courts to inform defendants fully of their jury trial rights, including that the jury must vote unanimously in order to convict. *See United States v. Delgado,* 635 F.2d 889, 890 (7th Cir.1981) (advising federal district courts to explain to defendants that juries must vote unanimously before conviction); *Commonwealth v. Hughes,* 536 Pa. 355, 374, 639 A.2d 763, 772 (1994) ("[T]he trial court must conduct a colloquy wherein it apprises the defendant . . . that the [jury] verdict must be unanimous. . . ."); *State v. Resio,* 148 Wis.2d 687, 696–97, 436 N.W.2d 603, 607 (1989) (directing lower courts to "advise the defendant that the court cannot accept a jury verdict that is not agreed to by each member of the jury."); *cf. Lopez v. United States,* 615 A.2d 1140, 1147 (D.C.1992) (holding defendant's waiver invalid because, *inter alia,* she was not informed of unanimity re-

quirement). In Vermont, the requirement that the trial judge explain unanimity to the defendant before a waiver can be valid emanates specifically from a criminal procedure rule. *State v. West*, 164 Vt. 192, 199, 667 A.2d 540, 545 (1995) (noting rule requires judge to inform defendant pre-waiver that "any verdict of guilty must be unanimous."). Therefore, it appears that a majority of jurisdictions either have no requirement that a trial court must describe jury unanimity to the defendant or only recommend that they do so before a defendant can "knowingly and voluntarily" waive his jury trial right.

Applying these principles to the case at hand, the record reflects that the discussion between respondent, defense counsel, and the trial court provided respondent with sufficient information about jury trials and his right to have such a trial. Respondent possessed substantial "knowledge" of his jury trial right and, therefore, he "knowingly" waived that right. "Knowledge," in this context means "acquaintance" with the principles of a jury and "knowingly" means acting consciously or intentionally in waiving the right to a jury. *See* BLACK'S LAW DICTIONARY, *supra*, at 872; RANDOM HOUSE DICTIONARY, *supra*, at 793. Because respondent's knowledge no longer need be "full," it need not be "complete" or "entire." *See* BLACK'S LAW DICTIONARY, *supra*, at 672, RANDOM HOUSE DICTIONARY, *supra*, at 573. The rule no longer requires a specific in-court litany of advice with respect to the "unanimity" requirement for the trial court to accept and permit the waiver, by a defendant, of his right to a jury trial.[6] Accordingly, the trial court did not err in accepting the waiver by respondent.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY; COSTS IN THIS COURT AND IN THE COURT**

---

**6.** We shall refer the issue of whether a defendant should be expressly advised of the unanimity requirement to the Rules Committee for its consideration and recommendation.

OF SPECIAL APPEALS TO BE PAID BY RESPON-
DENT.

BELL, C.J., joins in the result only.