Dear Honorable Stuart O. Simms
You have requested our opinion whether the Division of Correction of the Department of Public Safety and Correctional Services may disclose to the general public the projected date of an inmate's release on mandatory supervision.
The Division of Correction is forbidden by statute from disclosing to the general public the contents of an inmate's case record — including information concerning the inmate "conduct, effort, and progress" while in custody. In our opinion, the Division may reasonably construe this prohibition not to extend to the projected date of the inmate's release on mandatory supervision.
 I Release on Mandatory Supervision
Release on mandatory supervision is a form of conditional release from confinement that is available for an inmate in the custody of the Division of Correction who is serving a term in excess of 12 months. While release on mandatory supervision in some respects resembles release on parole, it is distinct from parole. Most importantly, release on mandatory supervision occurs by operation of law, while release on parole is within the discretion of the Parole Commission.
An inmate is entitled to release on mandatory supervision when the inmate has served time equal to the length of the inmate's term of confinement minus any "diminution credits" that the inmate has earned.[1]
Annotated Code of Maryland, Correctional Services Article ("CS"), § 7-501. Diminution credits are deductions of time from the inmate's sentence based upon the inmate's conduct while in custody. Such credits include: "good conduct" credits allowed in advance based upon the length of the inmate's sentence (CS § 3-704); work credits (CS § 3-705); educational credits (CS § 3-706); and special project credits (CS § 3-707). Diminution credits earned for "good conduct" or special projects may be revoked if the inmate violates applicable rules of discipline. CS § 3-709. See generally 86 Opinions of the Attorney General ___ [Opinion No. 01-002 (January 25, 2001)], slip op. at pp. 3-4.
We understand that the Division of Correction computes the projected date of an inmate's release on mandatory supervision when the inmate first comes into the Division's custody. This projection is generally based on the advance award of good conduct credits for the inmate's full term.[2] See CS § 3-704(a). Thereafter, the projected date of release is adjusted each month as the inmate earns additional diminution credits or forfeits those already earned. See COMAR 12.02.06.01B(8) (release date may change on a monthly basis).
Although an inmate on mandatory supervision is no longer confined in an institution, the inmate remains in legal custody under the supervision of the Division of Parole and Probation until the expiration of the full term of confinement. CS § 7-502(a); COMAR 12.02.06.07B. The terms and conditions of the inmate's release are set forth in a written order issued by the Division of Correction.[3] CS § 7-503. The inmate is also subject to all "laws, rules, regulations, and conditions that apply to parolees," as well as to "any special conditions established by a [parole] commissioner." CS § 7-502(b).
If an inmate released on mandatory supervision violates the conditions of release, he or she is subject to parole revocation procedures. COMAR12.08.01.13. When the Parole Commission revokes an inmate's release on mandatory supervision, it may rescind "any or all" of the inmate's previously earned diminution credits. CS § 7-504(a) (parole commissioner presiding at mandatory supervision revocation hearing may revoke inmate's diminution credits). In addition, following revocation, the inmate may not be awarded any new diminution credits. CS § 7-504(b).
 II Disclosure of Information Concerning Inmates
A. Public Information Act
In the Maryland Public Information Act ("PIA") the General Assembly has expressed a general policy in favor of broad public access to records and information in the possession of State agencies. See Annotated Code of Maryland, State Government Article, § 10-611 et seq. To carry out that policy, the PIA provides that "unless an unwarranted invasion of privacy. . . would result, the [PIA] shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection." SG § 10-612(b). The general rule in favor of disclosure may be overridden by exemptions set forth in the PIA itself or by other law, including another State statute, that requires specific information or records to remain confidential. SG § 10-615.
B. Confidentiality of Inmate Case Record
A State statute governing the compilation of information concerning an inmate severely limits the disclosure of those records. That statute thus trumps the general rule of disclosure in the PIA with respect to the records that it covers.
The Division of Correction is required to assemble a "case record" for each inmate sentenced to its custody. CS § 3-601. That file is to include a description and photograph of the inmate, the inmate's family history, the inmate's previous record, a summary of the facts of the case resulting in the inmate's incarceration, and the results of physical, mental, and educational exams administered by the Division. CS § 3-601(a). Based on the information initially developed, the Division classifies the inmate for appropriate treatment, training, or employment during confinement. CS § 3-601(c).
In addition, the managing official of the institution at which an inmate is incarcerated must supplement the file with information concerning the "conduct, effort and progress" of the inmate, as well as information concerning any offenses committed by the inmate while in confinement. CS § 3-601(d). The information concerning the inmate's progress is to be assembled "[i]n accordance with regulations adopted by the Division." Id.
As a general rule, the "contents" of an inmate's case record are confidential and may not be disclosed. CS § 3-602(a). There are a number of exceptions to this general rule. The contents of the case record may be disclosed to the inmate's attorney, a State's Attorney, or a State court judge. CS § 3-602(b)(2), (5), (6). The contents may also be provided to an employee of a State agency or a federal or local law enforcement agency, if the disclosure is "in furtherance of the employee's lawful duties," as well as to a health care provider, if necessary to ensure medical treatment for the inmate. CS § 3-602(b)(1), (7). In addition, the case record can be disclosed in response to a written request from a person who has written authorization for disclosure from the inmate. CS § 3-602(b)(8). Finally, the case record may also be provided to any other person authorized by a court order or "expressly authorized by law."[4] CS § 3-602(b)(3), (4).
Except for disclosures made to a judge or State's Attorney, the disclosure is contingent on the assent of the managing official of the institution. As a prerequisite to that approval, the official must be satisfied that the record will be used for "legitimate purposes" and that it will not be further disseminated to a person or government unit not authorized to receive it. CS § 3-602(c).
C. Required Disclosure of Projected Release Date
The case record statute is silent on whether the Division may disclose the projected date of an inmate's release on mandatory supervision. In particular, the projected release date does not appear in the list of items that are to be included in the case record and that are clearly encompassed within the statute's promise of confidentiality. Thus, the statute does not address whether that date may be disclosed to a member of the general public upon request. However, other provisions of State law affirmatively oblige the Department to notify certain persons concerning the impending release of an inmate on mandatory supervision.
In particular, each month the Division of Correction must report to local police agencies each inmate who committed an offense within the jurisdiction of the police department and who is scheduled to be released from confinement during the following month. CS § 3-607(b). The report must include the inmate's name, the date on which the sentence commenced, the county from which the inmate was committed, the crime, and the exact date that the inmate will be discharged. Id.
In addition, the Division must also notify, "in advance if practicable," victims and witnesses who have filed a notification request "if any of the following events occur concerning the defendant: . . .a release from confinement and any conditions attached to the release. . . ." Article 27, § 789(d)(4).[5] For purposes of that statute, "release from confinement" includes "any. . .statutorily authorized release of a defendant from a confinement facility" and therefore encompasses release on mandatory supervision. Article 27, § 789(a)(3). See also COMAR 12.02.06.07 (notification of crime victims before inmate's release); COMAR 12.12.13.05A (notification of inmate and victim concerning release of inmate from Patuxent Institution on mandatory supervision).
D. Regulations Concerning Compilation and Disclosure of Inmate Information
The Division's regulations generally provide that the Division "shall compile and maintain a complete record and history of an inmate," but do not specify the precise nature of the information to be compiled or how it is to be maintained. See COMAR 12.02.07.04A.
The regulations recognize the administrative practice of maintaining a separate "base file," "commitment file," and medical and psychological file for each inmate. See, e.g., COMAR 12.02.15.02D (work sheet relating to an inmate's escape to be placed in both base file and commitment file). Diminution of confinement records are part of the inmate's commitment file, although a copy is also placed in the base file upon an inmate's release from custody. COMAR 12.02.06.05M.
The Department's regulations concerning disclosure of information express a policy, consistent with the PIA, to "permit the greatest possible access to public information within the limitations of applicable statutes and within operational limitations." COMAR 12.02.04.03A(1). The regulations further provide that information regarding inmates may not be released except as authorized under the PIA, and note that medical or psychological information and information concerning pending investigations may be exempt from disclosure. COMAR 12.02.04.03C. In addition, the regulations specify that:
 Release of information regarding the identity of an inmate confined to a correctional facility is limited to the following:
(a) Name of inmate;
 (b) Criminal offense for which the inmate has been incarcerated (prior criminal history excluded);
(c) Length of sentence;
(d) Jurisdiction where convicted;
 (e) Status, if confined for either evaluation or committed as an eligible person to Patuxent Institution;
(f) Date received (and date of escape if an escapee);
 (g) If the inmate who was the subject of the inquiry is on escape, a physical description may also be released as well as a photograph, if available.
COMAR 12.02.04.03C(4). While undoubtedly some or all of this information is included in the inmate's case record, it is also generally available from other sources as well. As is evident, this regulation neither authorizes nor forbids disclosure of the projected date of an inmate's release.
The Department's regulations also reiterate the statutory restrictions on disclosure of inmate case records. See COMAR 12.02.07.04D-F (general restrictions); 12.12.24.03 (access to records concerning inmates in Patuxent Institution). Under those regulations, an inmate's case record must be reviewed in the presence of an institutional employee; in addition, a log is kept detailing the name of the person accessing the record, the date, the reason for the request, and other information. COMAR 12.02.07.04H.
We understand that, since mandatory supervised release was first introduced 40 years ago,[6] the Department has not adopted any regulation or other written policy directive that directly addresses disclosure of projected release dates. While the Division of Correction does not currently release such information to the general public, there have been times in the past when projected release dates were routinely disclosed in response to requests from private and public entities, as well as individuals.
Against this background, you ask whether the Division of Correction may disclose to the general public the projected date of an inmate's release on mandatory supervision.
 III Analysis
It is clear from CS § 3-602 and the related regulations that the case record itself is confidential and may only be disclosed in limited circumstances and with certain safeguards. The date of an inmate's projected release on mandatory supervision is not necessarily covered by CS § 3-602, as the statute does not mandate inclusion of that date in the case record. Even if the projected release date appears in the case record, the prohibition against disclosure of the contents of the case record does not entail that all information in the case record becomes non-disclosable simply because it happens to appear in the case record. As the Department's current regulations recognize, there is certain basic information concerning an inmate that has been derived from other public sources, that does not reveal confidential information collected for treatment purposes, and that should be available to the general public. See COMAR 12.02.04.
Although the statute itself does not state the policy underlying the rule limiting disclosure of the case record, and although there is no extant legislative history, the purpose is readily deduced from the nature of the information. The General Assembly has directed the Division of Correction to collect highly personal information concerning an inmate from a variety of sources, including the inmate's family background, health status, and the results of various examinations. This information is to be used to properly classify the inmate for an individualized program of training, treatment, and employment while in custody.
Much of the information gathered for an inmate's case record would be considered private or confidential in other contexts. For example, records relating to a physical examination or to a person's medical history are generally treated as confidential information under the state's medical records law, as well as under the PIA. See Annotated Code of Maryland, Health-General Article, § 4-302; SG § 10-616(j) (hospital records exempt from disclosure); SG § 10-617(b) (medical information relating to individual exempt from disclosure). Similarly, educational records concerning a person's performance at school would be accorded confidentiality. See, e.g., SG § 10-616(i) (records of scholastic achievement in personnel records); SG § 10-616(k) (student records); 20 U.S.C. § 1232g (federal funds to be withheld from universities that permit release of "educational records"). Criminal history record information in the possession of the Division would also normally remain confidential and be disclosed only in very limited circumstances. See Annotated Code of Maryland, Article 27, § 749.
The prohibition against disclosure of the contents of a case record in CS § 3-602 thus appears to be an effort to preserve a degree of privacy for those individuals who are incarcerated in the custody of the Division of Correction. The Division, as the agency charged with administering the statute, has discretion to construe the statute in light of the evident legislative purpose. In particular, the Legislature has charged the Division with adopting regulations concerning the records of the "conduct, effort, and progress" of an inmate that are to become a part of the inmate's confidential case record. CS § 3-601(d). The Division's administrative construction of the statute will likely be accorded considerable weight by the courts. See, e.g., Stanford v. Maryland Police Training and Correctional Commission, 346 Md. 374, 389,697 A.2d 424 (1997); Baltimore Gas Electric Co. v. Public Service Commission, 305 Md. 145, 161, 501 A.2d 1307 (1986).[7]
Deference to the Division's administrative construction of the statute is especially appropriate, given that the permissibility of disclosure under the statute depends on an expert assessment of the situation. That is, we could speculate that disclosure of the projected date of release might, under some circumstances, impermissibly disclose information about the inmate's "conduct, effort, and progress." For example, if a requester were to ask periodically about a particular inmate's projected date of release, the requester would be able to reliably infer episodes of misconduct from extensions in that date.
On the other hand, we could also speculate that disclosure of the projected date of release might, under other circumstances, not impermissibly disclose protected information. For example, because good conduct credits are awarded in advance, when an inmate is newly incarcerated, anyone with elementary math skills can compute an inmate's projected date of release to a fair degree of accuracy, without knowing anything about personal information in the inmate's case record.
The point is that our speculation is no substitute for the Division's carefully considered, authoritative review of whether disclosure of the date always, sometimes, or never would result in a disclosure prohibited by the statute. For example, although diminution credits are not included on the statutory list of items to be included in the case record and kept confidential, the Division could reasonably conclude that disclosure of the specific types of credits that an inmate earns or loses would impermissibly reveal the inmate's progress while in confinement. But the Division could also conclude that the cumulative effect of those adjustments reveals little specific information about the inmate's actual conduct and progress within the institution. The Division could also reasonably weigh the public interest expressed in the legislative decision not only to permit, but to require, the Division to inform local police departments, victims, and witnesses of an inmate's impending release.
The Division's interpretation should be incorporated in its regulations. Should those regulations provide that the projected release date may be disclosed in some circumstances, the disclosure should be accompanied by a warning that the date is subject to change in order to avoid confusion.
 IV Conclusion
In our opinion, the Division of Correction may reasonably construe the statutory prohibition against disclosure of information in an inmate's case record not to extend to the projected date of the inmate's release on mandatory supervision.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] The statute also includes an additional condition that the sentence was imposed on or after July 2, 1970 — a condition satisfied by the vast majority of inmates currently in custody. CS § 7-501(2).
[2] The projection would also include any diminution credits that the inmate may have accrued while confined in a local facility prior to commitment to the Division. See CS § 11-501 et seq.
[3] That order must include a requirement that the inmate make restitution, if restitution was part of the inmate's sentence. CS § 7-503(b).
[4] Other sections of the statute also authorize provision of the case record to the Parole Commission, CS § 3-603; to managing officials of federal and local correctional facilities, as well as those in other states, CS § 3-606; and to local police in response to a written order of the police chief, CS § 3-607(a).
[5] In some circumstances, the Department must affirmatively notify the victim of a violent crime of certain events that may occur after the inmate's release. In particular, the Department must notify the victim of a warrant or subpoena issued by the Parole Commission as a result of an alleged violation of the conditions of release, of the outcome of a hearing on the alleged violation, and of any punishment imposed for any violations sustained. CS § 7-505(b).
[6] The provisions concerning mandatory supervised release, the confidentiality of an inmate's case record, the dissemination of the case record to other persons, and the obligation of the Division to notify local police of an inmate's expected release have been part of State law since 1962. Chapter 123, Laws of Maryland 1962.
[7] The deference given to the agency's interpretation depends on several factors: duration and consistency of the interpretation, the degree to which the agency's construction was made known to the public, the extent to which the Legislature was aware of the administrative interpretation when it reenacted relevant statutory language, and the extent to which the agency engaged in "a process of reasoned elaboration" in reaching its interpretation. Marriott Employees Federal Credit Union v. Motor Vehicle Administration, 346 Md. 437, 445-46, 697 A.2d 455
(1997). Thus, an agency's construction of a statute will be accorded greater weight if it is consistently applied and formally incorporated in the agency's regulations.
 *Page 237